THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DOTHAN ROGERS, Defendant-Appellant.

Second District   No. 2—86—1054

Opinion filed July 13, 1988.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Daniel D. Yuhas and Richard D. Frazier, both of State Appellate Defender's Office, of Springfield, for appellant.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers, Robert J. Biderman, and Kenneth R. Baumgarten, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE LINDBERG delivered the opinion of the court:

On August 25, 1986, defendant, Dothan Rogers, was charged in the circuit court of Winnebago County with attempted robbery. (Ill. Rev. Stat. 1985, ch. 38, par. 8—4.) A jury trial was conducted, and the jury was unable to reach a verdict. The court declared a mistrial. A second jury trial was conducted, and on September 19, 1986, defendant was found guilty of attempted robbery and later sentenced to five years' imprisonment.

On appeal, defendant argues he was denied his sixth amendment right to effective assistance of counsel. Specifically, defendant argues he was prejudiced by: (1) his counsel's failure to object at all during the prosecutor's closing argument, which contained numerous instances of improper and prejudicial arguments; and (2) statements elicited by defense counsel from a State's witness during cross-examination, which corroborated the complaining witness' allegations that defendant intended to rob her.

The complaining witness, Kathy Johnson, was the first witness called by the State. She testified that at approximately 3:20 p.m. on

May 2, 1986, she was in her office when defendant walked in and asked her if she could direct him to a vocational training facility which was located in an office on that floor. Ms. Johnson told him that she would show him since she was on her way to the rest room. Ms. Johnson directed him to the office he sought, and she went into the rest room. As Ms. Johnson attempted to leave the rest room, defendant grabbed her by the face and neck and pushed her back into the rest room. Ms. Johnson testified that she then asked defendant what he wanted, and defendant allegedly responded, "Do you have any money?" According to Ms. Johnson, after she replied that she did not, defendant then asked, "Well, do you have any money in your purse?" She answered that she might have $10 in her purse back in her office, and she testified that defendant answered "Well, fuck, that's not worth it." Ms. Johnson testified that she then told defendant that there might be additional money back in her office and that they should return there and look. As they were returning to Ms. Johnson's office, Ellen Conti, an employee on the floor, asked her if she was okay. Ms. Johnson testified that she then began running towards Ms. Conti and was not sure where defendant went.

Ellen Conti testified that at approximately 3:30 p.m. on May 2, 1986, she was in her office when she heard a scream. She looked out of her office door and after a few minutes observed Ms. Johnson and defendant walk out of the bathroom. She asked Ms. Johnson if she was okay, and Ms. Johnson began walking toward her. Defendant began running in the opposite direction. On cross-examination, she testified that although she did not tell the police when interviewed, Kathy Johnson stated to her that defendant asked for money. This allegedly occurred before the police arrived.

Florence Hofert testified that she was in her office at the time in question and heard a scream. She then observed defendant outside of her door and asked him what he was doing. She testified that defendant swiftly walked to the elevator and then exited the floor by use of the stairway.

Officer Steve Allen testified that he received a call at approximately 3:41 p.m. informing him of the alleged attempted robbery and a description of defendant. At approximately 3:50 p.m., Officer Allen observed defendant walking on a street and drinking a can of soda. Officer Allen then placed defendant under arrest. At the time defendant was arrested, he was six to eight blocks from the building where the incident occurred. Defendant did not resist the arrest.

Detective Dominic Iasparro, a Rockford policeman, testified that at approximately 4:30 p.m. on May 2, 1986, he interviewed defendant,

and defendant "admitted to me that he had attempted to rob the lady at the Nu-State building." Detective Iasparro testified that defendant admitted that he attempted to rob Ms. Johnson because she was an "easy mark for money," grabbed her around the neck, demanded money, and stated, "Fuck it, it is not worth it," when Ms. Johnson told defendant that she only had $10 in her purse. On cross-examination, Detective Iasparro admitted that although the police obtained written statements from the other witnesses, they did not attempt to have defendant make a written statement and simply recorded a summary of defendant's alleged oral confession in a police report. Detective Iasparro concluded his testimony by stating that he used the police report containing the summary of defendant's oral confession to refresh his memory of the incident before he took the stand.

The State's next witness was Ray Ferguson. He testified that he was on the floor at the time in question and saw Ms. Johnson and defendant walk out of the bathroom together. He had come out into the hall after his secretary, Ellen Conti, asked Ms. Johnson if she was all right. He testified that Ms. Johnson then walked a few steps away from defendant and then began running toward them. He testified that defendant "mumbled something, I couldn't quite hear, waved his hands, and then *** took off for the elevator."

Defendant took the stand in his own defense. He testified that on the day before the incident, he attempted suicide. He had seen two physicians for his illness and had taken prescribed muscle suppressants on the day of the incident. He had also consumed "three or four Millers," two brandies, and used cocaine on the day of the incident. Defendant testified that he was in the building where Ms. Johnson worked because he was instructed to go there by Rock River Training, a special training program offered through Office Opportunities Industrialization Center. He could not find the office, so he walked into the office of Ms. Johnson to ask directions. Ms. Johnson offered to show him where it was and did so.

Defendant testified that he soon realized that the office Ms. Johnson directed him to was not the office he needed and began walking back down the hallway. As defendant passed the rest room, Ms. Johnson came "bolting out of the bathroom and she startled me, and I grabbed her and I pushed her back in the bathroom." Defendant explained that, "I was high and in a panic and stuff from going to prison and the prison is like a combat zone and and when she come [sic] out of that bathroom I kind of like got a flashback and she just startled me and I grabbed her." He testified that once inside the rest room, he "was tripping out," and Ms. Johnson began screaming and

wanting to know if he wanted her money. He replied he did not want her money and apologized. Defendant then left the rest room and walked out of the building by use of the stairs.

Defendant testified that no other officer was present when he was questioned by Detective Iasparro. Defendant testified that he told Detective Iasparro what occurred. Defendant denied that he ever told Detective Iasparro that Ms. Johnson "was an easy mark," or that he ever asked her for money. He also denied ever making the statement "Fuck it, it ain't worth it" to Ms. Johnson or to Detective Iasparro. Defendant testified on direct examination that he had pleaded guilty to and been convicted of kidnapping on January 16, 1980, and that he pleaded guilty to and was convicted of unlawful restraint on November 22, 1985.

The State called Detective Steven Pirages as a rebuttal witness. Detective Pirages testified that he was also present when defendant allegedly confessed to Detective Iasparro. Detective Pirages testified that defendant admitted he attempted to rob Ms. Johnson because she was "an easy mark to get some money," grabbed her around the neck, demanded money from her, and made the statement, "Fuck it, it ain't worth it" when Ms. Johnson told defendant that she only had $10 in her purse. Detective Pirages concluded his testimony by stating that he and Detective Iasparro conferred with one another while Detective Iasparro was writing his report.

■ In *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, the Supreme Court established a two-component test to review claims of ineffective assistance of counsel. To prevail on such a claim, defendant must establish: (1) trial counsel's representation "fell below an objective standard of reasonableness"; and (2) there is a reasonable probability—a probability which is sufficient to undermine confidence in the outcome but which need not be proof by a preponderance of the evidence—that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington* (1984), 466 U.S. 668, 688, 694, 80 L. Ed. 2d 674, 693, 698, 104 S. Ct. 2052, 2064, 2068; *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.

■ We first address the second component or prejudice prong of the *Strickland* test. We agree with defendant that the prosecutor, on numerous occasions during final argument, misstated the evidence and made improper and prejudicial arguments in front of the jury. Defendant admitted to pushing Kathy Johnson back into the washroom and grabbing her by the neck and face. The key factual dispute at trial was whether or not defendant asked for money, thereby ex-

pressing an intent to rob Kathy Johnson. On this disputed issue, the State presented the testimony of the complaining witness, Kathy Johnson and the two police detectives, Iasparro and Pirages, who testified to defendant's alleged confession of an intent to rob Kathy Johnson. Additionally, Ellen Conti stated that Kathy Johnson told her defendant asked for money. Defendant testified that he never confessed to such an intent or the statement "Fuck it, it ain't worth it." The jury was faced with defendant's word against the word of two detectives and Kathy Johnson and Ellen Conti.

During final argument, the prosecutor repeatedly emphasized the alleged confession of defendant while keying on defendant's alleged statement of "Fuck it, it ain't worth it" in response to Ms. Johnson's statement that she only had $10 in her purse. The prosecutor repeatedly argued how Detectives Iasparro and Pirages could not have known of this statement since they had no contact with the witnesses before they interviewed defendant. The prosecutor argued that only defendant could have told the officers of this statement. The record does not contain evidence that these officers had no contact with the witnesses prior to interviewing defendant. The State in its brief to this court admits that Detectives Pirages and Iasparro "did not directly testify that they had not talked to any witnesses before interviewing defendant." The State cites to Iasparro's testimony that he did not take the written statements of any of the witnesses to support the argument of the prosecutor. The prosecutor's argument was not a reasonable inference drawn from facts in evidence. (See *People v. White* (1985), 134 Ill. App. 3d 262, 479 N.E.2d 1121 (it is improper to make arguments which misstate the evidence or that are not based on the evidence).) The prosecutor's argument was speculation based on the absence of evidence which he may have easily presented to the jury but did not.

The prosecutor improperly argued his personal belief in the credibility of the testimony of Detectives Iasparro and Pirages. First, it is improper for a prosecutor to express his personal belief in the credibility of witnesses. (*People v. Valdery* (1978), 65 Ill. App. 3d 375, 381 N.E.2d 1217.) Second, a police officer's testimony is to be evaluated in the same way as that of any other witness, and there is no presumption that a police officer's testimony is more credible than other witnesses' testimony. (*People v. Ford* (1983), 113 Ill. App. 3d 659, 447 N.E.2d 564.) The prosecutor stated:

> "Dominic Iasparro. Steve Pirages. What can I say about Dominic Iasparro and Steve Pirages, seasoned veterans on the police force. Credibility untouchable. Important testimony.

\* \* \*

> You take all the evidence in consideration and look at the testimony of the witnesses and believe me you look at Iasparro and Pirages and they won't get on the stand and lie and make up something."

This type of argument from the prosecutor was not limited to a single instance and, taken in context, was used by the prosecutor to improperly interject his personal views and improperly bolster the credibility of the testimony given by Iasparro and Pirages. *People v. Townsend* (1985), 136 Ill. App. 3d 385, 483 N.E.2d 340 (although a proper subject of comment in closing argument, it is fundamental that an attorney may not interject his personal belief in the veracity of a witness' testimony); *People v. Johnson* (1986), 149 Ill. App. 3d 465, 500 N.E.2d 728; *People v. Ford* (1983), 113 Ill. App. 3d 659, 447 N.E.2d 564.

The prosecutor referred to other evidence which was not supported by the record. The prosecutor stated that he did not know why "this defendant went to a house and hides [*sic*]. I don't know why he jumped in the car." The record contains no evidence at all that defendant ever attempted to hide. The only evidence concerning defendant's flight from the scene was testimony of Ray Ferguson that when he left the building to look for defendant, he spotted defendant walking about a block and a half away, and that defendant ran when Mr. Ferguson chased him. The prosecutor's argument improperly placed before the jury evidence not produced during trial and was directed at raising an inference of guilt based on defendant's flight from the scene. This improper argument prejudiced the plaintiff. (See *People v. Harris* (1972), 52 Ill. 2d 558, 288 N.E.2d 385 (flight from police is a circumstance tending to show consciousness of guilt).) Further, the prosecutor's reference to facts not in evidence left the jury free to speculate as to defendant's alleged actions to avoid capture. Insinuation that leaves the jury free to speculate may be more prejudicial than erroneously admitted specific proof. *People v. Emerson* (1983), 97 Ill. 2d 487, 455 N.E.2d 41.

The prosecutor made additional improper arguments which by themselves may not have been independently prejudicial, but when added to the other instances of improper and prejudicial argument raise serious doubts as to whether or not defendant received a fair trial. The prosecutor improperly referred to defendant's prior convictions as substantive proof that defendant was familiar with the legal system, and that because of this familiarity defendant was lying and trying "to get out the easiest way he can." (*People v. Simpson* (1984), 129 Ill. App. 3d 822, 473 N.E.2d 350.) Additionally, the prosecutor

stated that defendant's testimony, if believed, would imply that *all* of the State's witnesses were lying. This argument by which the prosecutor sought to impeach the credibility of defendant's testimony was improper because it misstated the evidence. A prosecutor may argue that a defendant is lying if there is testimony at trial which contradicts defendant. (See *People v. Johnson* (1986), 149 Ill. App. 3d 465, 500 N.E.2d 728.) However, where a defendant's testimony is not inconsistent with that of any of the other witnesses, it is improper to argue that defendant is a liar because there is no basis in the record for such an argument. (*People v. Strange* (1984), 125 Ill. App. 3d 43, 465 N.E.2d 616.) In the instant case, the prosecutor's argument incorrectly suggested that defendant's testimony was inconsistent with *all* seven of the State's witnesses. Defendant's testimony was only inconsistent with the testimony of Ms. Johnson, Ellen Conti and Detectives Iasparro and Pirages and only on the question of whether or not defendant requested money. The prosecutor's statement improperly characterized the testimony of the State's other witnesses as contradicting defendant's testimony and tending to show that defendant was lying.

We find it unnecessary to assess the individual prejudicial impact of each instance of defense counsel's failure to object to the prosecutor's improper argument, where, as here, the cumulative impact of defense counsel's repeated failures to object creates a reasonable probability that, but for defense counsel's failure to object, the result would have been different. *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (reasonable probability is a probability sufficient to undermine confidence in the outcome); see *People v. Whitlow* (1982), 89 Ill. 2d 322, 433 N.E.2d 629 (the court under the plain error rule (107 Ill. 2d R. 615(a)) found the cumulative impact of numerous instances of improper prosecutorial comment to have raised reasonable grounds for its finding that the jury had been prejudiced, and in reversing the defendants' convictions, the court declined to assess the prejudicial effect of each isolated comment); see *People v. Johnson* (1986), 149 Ill. App. 3d 465, 500 N.E.2d 728 (cumulative effect of improper argument could reasonably be determined to have prejudiced the jury and constituted a material factor leading to the defendant's conviction, requiring a new trial).

■ We now address the first component of the *Strickland* test, whether defense counsel's failures to object "fell below an objective standard of reasonableness." (*Strickland v. Washington* (1984), 466 U.S. 668, 688, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2065.) Defendant's trial counsel failed to object *at all* to these numerous instances

of improper and prejudicial argument by the prosecutor. Nor did defendant's trial counsel attempt to counter the prosecutor's prejudicial argument in his closing argument. Defendant's trial counsel failed to meet his duty "to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." (*Strickland v. Washington* (1984), 466 U.S. 668, 688, 80 L. Ed. 2d 674, 694, 104 S. Ct. 2052, 2065.) Defendant's trial counsel's failure to object to the improper and prejudicial arguments of the prosecutor "fell below an objective standard of reasonableness" upon which effective assistance of counsel is judged. (*Strickland v. Washington* (1984), 466 U.S. 668, 688, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064; see *People v. Frazier* (1982), 107 Ill. App. 3d 1096, 438 N.E.2d 623.) This failure of defendant's trial counsel to object to the prosecutor's improper argument was serious enough to deprive defendant of a fair trial, a trial whose result is reliable. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) Accordingly, we must reverse and remand for a new trial.

■ Next, we briefly address defendant's second contention of ineffective assistance of counsel as it may arise again on retrial. Defendant argues that his trial counsel was ineffective when he cross-examined Ellen Conti and elicited testimony which corroborated Kathy Johnson's testimony that defendant requested money from Kathy Johnson. We do not find trial counsel's cross-examination of Ellen Conti to have been ineffective. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) Effective assistance of counsel refers to competent, not perfect, representation. (*People v. Stewart* (1984), 104 Ill. 2d 463, 473 N.E.2d 1227.) In order to prevail on an ineffective assistance claim "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" (*Strickland v. Washington* (1984), 466 U.S. 668, 689, 80 L. Ed. 2d 674, 694-95, 104 S. Ct. 2052, 2065.) In the instant case, defendant fails to overcome the presumption that his trial counsel's cross-examination of Ellen Conti was the result of sound trial strategy. The record clearly shows that defense counsel was attempting to impeach the trial testimony of Ellen Conti. While our review of the record shows that the effectiveness of this cross-examination may be debated, defense counsel's attempt to impeach Ellen Conti under the circumstances did not fall below an objective standard of reasonableness and could reasonably be determined to have been the result of sound trial strategy. *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.

In light of our disposition of this appeal on the basis of defense counsel's ineffectiveness in failing to object to prejudicial argument of the prosecutor enumerated above, we need not address defendant's other arguments.

The judgment of the circuit court of Winnebago County is reversed and the cause remanded for a new trial.

Reversed and remanded.

WOODWARD and UNVERZAGT, JJ., concur.