2018 IL App (2d) 160350
No. 2-16-0350
Opinion Filed September 28, 2018

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Kane County. |
|---|---|---|
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 14-CM-922 |
| | ) | |
| LUIS A. CAMACHO, | ) | Honorable |
| | ) | John A. Noverini, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE ZENOFF delivered the judgment of the court, with opinion.
Justices Hutchinson and Spence concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a jury trial in the circuit court of Kane County, defendant, Luis A. Camacho, was convicted of domestic battery based on insulting or provoking physical contact (720 ILCS 5/12-3.2(a)(2) (West 2014)).  Defendant raises three issues in his direct appeal.  The first is whether the State proved all elements of the crime beyond a reasonable doubt, when none of its witnesses were present during the alleged incident and defendant testified to an alternate version of events.  The second is whether the trial court erred in admitting the recording of a 911 telephone call, when the State did not present a witness who could identify the caller's voice.  Thirdly, defendant contends that comments by the prosecutor during closing argument constitute plain error that excuses defendant's forfeiture of the issue and warrants reversal.  We affirm.

¶ 2         I. BACKGROUND

¶ 3 On March 13, 2014, defendant was charged in a three-count complaint with domestic battery based on bodily harm (720 ILCS 5/12-3.2(a)(1) (West 2014)), domestic battery based on insulting or provoking physical contact, and possession of a firearm without a valid FOID card (430 ILCS 65/2(a)(1) (West 2014)). These charges stemmed from an Elgin police investigation in response to a 911 complaint of domestic violence. A jury found defendant not guilty of domestic battery based on bodily harm but guilty of domestic battery based on insulting or provoking physical contact. Before trial, the State nol-prossed the charge of possession of a firearm without a valid FOID card.

¶ 4 In a pretrial motion *in limine*, defendant sought to exclude the recording of the 911 call, arguing that none of the State's witnesses would be able to meet the foundational requirement of personally identifying the caller's voice. The State countered that it could prove the identity of the caller through circumstantial evidence. The trial court reserved ruling until trial. At trial, outside the presence of the jury, the court listened to the recording and heard the testimony of the responding officers, Bryan Powell and John Mellinger. The trial court denied defendant's motion to exclude the recording.

¶ 5 The trial took place on October 27, 2015. Mary Wanic, a 911 operator for the City of Elgin, testified that she answers 911 calls as part of her duties. On March 13, 2014, at approximately 12:39 a.m., she answered a 911 call from a person who said that her name was Mirella Camacho. Wanic identified a CD presented by the State and said that it contained a recording of the call in question. Wanic testified that she had listened to a recording of the call earlier that day and that the recording on the CD was a fair and accurate depiction of the call.

The court admitted the CD into evidence over defendant's objection for insufficient foundation. It was then played for the jury.

¶ 6    On the recording, the caller identified herself as Mirella Camacho. She said that her husband was upset and had grabbed her by her neck, and she requested police assistance. In response to questions by Wanic, the caller identified her husband as defendant, gave his date of birth, and described what he was wearing. She further stated that he had just returned home from work and that she did not think he had been using drugs or alcohol. At one point, the caller became upset. Wanic asked if the caller's husband was present, and the caller responded that he was right in front of her. She said, "He's asking to hang up the phone—that he would leave." Wanic kept the caller on the phone until the police arrived at the scene.

¶ 7    Officer Powell testified that on March 13, 2014, at approximately 12:38 a.m., he received a dispatch for a domestic-battery call. He arrived "a few minutes" later at the dispatched location, which was the residence of defendant and his wife, Mirella. An adult female, who identified herself as Mirella Camacho, let him into the apartment, where he also observed defendant, a teenage boy, and an infant child. Officer Powell described Mirella as distraught and quiet. He did not observe any injuries on Mirella.

¶ 8    Officer Powell testified that he interviewed defendant in the foyer immediately outside of the apartment. Officer Mellinger was also present during the interview. Officer Powell testified that defendant admitted that he "pulled [Mirella] up by her arm off the couch" and placed his hands around her neck in a choking fashion while pushing her against a wall. Officer Powell added that defendant held out his arm and demonstrated how he wrapped his hand around Mirella's neck. Officer Powell testified that he saw no signs of recent drug or alcohol use by defendant.

¶ 9     Officer Mellinger testified similarly.  He stated that he entered the apartment with Officer Powell and observed defendant, Mirella, and two children.  He described Mirella's manner as calm.  Officer Mellinger recalled that defendant stated that he became angry with Mirella and that he choked her; as he described the incident, he extended his hand and made a "gripping" motion.  Officer Mellinger testified that defendant displayed no signs of drug or alcohol impairment.

¶ 10     Defendant moved for a directed verdict at the conclusion of the State's case-in-chief, which the trial court denied.

¶ 11     Defendant testified on his own behalf.  On March 13, 2014, he had an argument with Mirella.  The argument started while he was at work and continued when he returned home, at around 12:20 a.m.  According to defendant, Mirella was on the sofa and she raised her voice at him from the moment he entered the apartment.  Defendant testified that he continued walking through the apartment toward the back door, intending to leave.  However, Mirella said something that caused him to turn around and walk back into the living room area.  As he and Mirella continued to argue, she began to get up from the sofa.  Defendant testified that he helped her up, explaining that she was still recovering from recent surgery.

¶ 12     Defendant testified that he again started toward the back door, intending to leave the apartment.  Mirella followed him, still arguing.  When he opened the back door, she grabbed him by his right arm.  As a "quick reaction" to Mirella grabbing his arm, he turned and put his free arm on her chest and "put her against the wall to continue to work my way out."  He testified that he never intentionally put his hand around her neck, that he never squeezed her neck, and that he never tried to constrict her ability to breathe.

¶ 13    During cross-examination, defendant was asked if it was Mirella's voice on the 911 recording.  Over objection, he answered that it was her voice.  He admitted that he was standing near Mirella while she was on the phone with the 911 operator.  He denied ever telling Mirella to hang up the phone.  He stated that the police officers arrived at the apartment eight minutes after Mirella called 911.  Defendant denied telling the officers that he grabbed Mirella by the arm, pulled her off the sofa, and held her against the wall with his hands on her throat.  Defendant presented no other witnesses.

¶ 14    During his closing argument, the prosecutor urged the jury to consider the credibility of the witnesses.  He argued that the police officers were just doing their job and had no reason to lie.  As to defendant, however, the prosecutor suggested that his personal stake in the outcome of the case gave him a motive to lie.

¶ 15    The prosecutor argued that the jury did not need to hear from Mirella in person to reach a guilty verdict.  He reminded the jurors that this was a domestic-violence case and that they should use their common sense as to why Mirella did not appear in court.  He argued that, regardless of why she did not testify, Mirella still reached out for help, and they heard her story through the recording of the 911 call.

¶ 16    During her closing argument, defense counsel reminded the jury that defendant was the only eyewitness to testify and questioned why Mirella and the children did not appear to tell their stories.  The prosecutor answered in his rebuttal closing argument that a reason the jury should care about this case was that the children were there to observe this incident.  He repeated that the jury had heard what happened through the recording of the 911 call.

¶ 17    The jury found defendant guilty of domestic battery based on insulting or provoking physical contact and not guilty of domestic battery based on bodily harm.  The court entered

judgment on the verdict. Defendant moved for judgment notwithstanding the verdict. The court denied defendant's motion and sentenced him to one year of conditional discharge. Defendant timely appealed.

¶ 18                                    II. ANALYSIS

¶ 19    Defendant raises three arguments on appeal: (1) the trial court erred in admitting the recording of the 911 call, (2) the State failed to prove him guilty beyond a reasonable doubt, and (3) the prosecutor made improper comments during closing argument.

¶ 20                    A. Admissibility of the 911 Recording

¶ 21    We start by considering defendant's argument that the court erred in admitting the 911 recording. He claims that there was an insufficient foundation to establish the caller's identity, because the State presented (1) no witnesses who could personally identify the caller's voice and (2) inadequate circumstantial evidence of the caller's identity.[1] The State responds that Mirella was identified as the caller through circumstantial evidence; the caller provided information that matched the police officers' observations, and Mirella was the only adult female at the scene when the police arrived a few minutes after the call was made.

¶ 22    Defendant argues for a *de novo* review of the admission of the 911 recording. Defendant claims that the ruling was based on "an erroneous understanding and application of the law." He relies on *People v. Caffey*, 205 Ill. 2d 52, 89 (2001), where the defendant argued that the evidentiary rulings at issue were "uniquely legal" and required a *de novo* review. At oral

---

[1] The State tendered the 911 recording for its substantive content. Defendant challenged the admission of the recording only as to its foundation. Defendant did not raise issues of hearsay or the confrontation clause, and he has therefore forfeited any claims he might have had with regard to those issues. *People v. Burman*, 2013 IL App (2d) 110807, ¶ 32.

argument, defendant asserted that the trial court made a legal error by relying on portions of the content of the 911 recording to determine its admissibility. For the reasons stated below, we reject that argument, and therefore we find that abuse-of-discretion is the proper standard of review.

¶ 23    We will not disturb a ruling on the admissibility of evidence absent an abuse of discretion. *People v. Adkins*, 239 Ill. 2d 1, 24 (2010). Audio recordings that are otherwise competent are admissible when a proper foundation is laid that assures the court of the recording's reliability and authenticity, including the identification of voices. *People v. Rios*, 145 Ill. App. 3d 571, 582 (1986). "Communications by telephone do not authenticate themselves; the person speaking must be identified. [Citation.] Being hearsay, a mere assertion by the speaker as to his identity cannot be taken as a sufficient showing of his identity." Michael H. Graham, Cleary and Graham's Handbook of Illinois Evidence § 901.7 (8th ed. 2004). Thus, a recording of a telephone conversation is admissible when it is otherwise competent and the speaker can be identified by a witness who is familiar with the speaker's voice or through other corroborative circumstances. *Caffey*, 205 Ill. 2d at 94-95. In other words, the trial court need only determine the identity of the person(s) on the recording and may do so through voice identification or other corroborative circumstances.

¶ 24    Without a witness who could directly identify the caller by voice, the State was required to authenticate the recording through other corroborative circumstances. Defendant argues that the State failed to do so, asserting that the content of the 911 recording could not be used as part of the corroborative circumstances to authenticate the identity of the caller. In other words, defendant asserts that, to determine who the caller was, the court could not consider any of the details the caller provided. In his view, the court could look only to circumstances independent

of the content of the recording, because the recording was not yet in evidence. Defendant offers no authority to support this argument.

¶ 25 Our supreme court has addressed the issue of telephone conversations authenticated through other corroborative circumstances. In *Caffey*, a defense witness testified that she received 15 to 20 telephone calls from the same woman. *Caffey*, 205 Ill. 2d at 94. The witness had never heard the woman's voice prior to the calls. *Caffey*, 205 Ill. 2d at 94. In response to the State's objection for lack of foundation, the defendant offered that the witness would authenticate the identity of the caller by testifying that the caller identified herself during the calls and that the name she gave matched the information displayed on the witness's caller-ID device. *Caffey*, 205 Ill. 2d at 94. The court held that, where the content of the calls was matched with other corroborative circumstances, these circumstances provided a sufficient foundation to admit testimony regarding the content of the telephone conversations. *Caffey*, 205 Ill. 2d at 95-96.

¶ 26 In *People v. Edwards*, 144 Ill. 2d 108, 166 (1991), the State offered recordings of ransom calls to prove that the defendant had kidnapped and murdered the victim. To identify the defendant as the caller, an FBI agent testified that he observed a person fitting the defendant's description at the same telephone booth to which previous ransom calls had been traced, within a short time of when the call in question was placed. *Edwards*, 144 Ill. 2d at 167-68. Another witness described seeing the defendant inside the telephone booth within minutes of when the call was made. *Edwards*, 144 Ill. 2d at 167. Both witnesses described seeing a woman, who was later identified as the defendant's accomplice, seated in a nearby car. *Edwards*, 144 Ill. 2d at 167-68. The court found that the State had proven the defendant's identity. *Edwards*, 144 Ill. 2d at 168.

¶ 27    In the present case, the call came into the 911 dispatch unit at approximately 12:39 a.m. The caller stated that she needed police sent to her home because her husband had grabbed her by the neck.  In response to questioning by Wanic, the caller gave her name as well as defendant's name, his date of birth, and a description of what he was wearing.  Mirella and defendant were both in the apartment when the police arrived a few minutes later.  Mirella and defendant were the only adults present.  The information the caller supplied with regard to defendant's name, his date of birth, and what he was wearing matched perfectly with the officers' observations at the scene.  Additionally, a photograph taken shortly after the officers arrived shows redness around the area of Mirella's neck, which further corresponds with the caller's statements.  Thus, as in *Caffey* and *Edwards*, the content of the call was corroborated by other circumstances identifying Mirella as the caller.  Accordingly, the trial court did not abuse its discretion in admitting the recording into evidence.

¶ 28                                B.  Reasonable Doubt

¶ 29    Next we address defendant's argument that the State failed to prove him guilty beyond a reasonable doubt.  When a defendant challenges the sufficiency of the evidence, we must ask whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *People v. Brown*, 2013 IL 114196, ¶ 48 (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)).  It is up to the trier of fact to weigh the evidence and resolve conflicts in the testimony, and we will not substitute our judgment for that of the trier of fact unless the "evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt."  *Brown*, 2013 IL 114196, ¶ 48.

¶ 30 Section 12-3.2(a)(2) of the Criminal Code of 2012 defines domestic battery based on insulting or provoking physical contact:

"A person commits domestic battery if he or she knowingly without legal justification by any means

***

(2) Makes physical contact of an insulting or provoking nature with any family or household member." 720 ILCS 5/12-3.2(a)(2) (West 2014).

¶ 31 In count II of the complaint, the State alleged that defendant "grabbed Mirella by the arm and pulled her up off the couch before grabbing her throat with his hands." The essential elements as stated in the jury instructions were that (1) "the defendant knowingly made physical contact of an insulting or provoking nature with Mirella Camacho," (2) "Mirella Camacho was then a family or household member of the defendant," and (3) "the defendant was not justified in using the force which he used." See Illinois Pattern Jury Instructions, Criminal, No. 11.11 (4th ed. 2000) (hereinafter IPI Criminal 4th).

¶ 32 Defendant challenges only the first element, arguing that he did not knowingly make insulting or provoking physical contact with Mirella. Defendant testified that Mirella was recovering from recent surgery and that he grabbed her by the arm because he was helping her off the sofa. Defendant denied grabbing her by the throat. Instead, he testified that she was the one who aggressively grabbed him:

"When she grabbed me by my right arm, I moved quickly with my left. There was the door, and there's a wall like literally about two feet or a foot and a half separating [*sic*]. So with my left hand, right away I put her against the wall because I didn't want to put her anywhere else. I opened the door, and as she grabbed me, I kind of put my hand

on her chest. I'm higher than her, and that's how I put her against the wall to continue to work my way out."

Defendant contends that touching Mirella's chest was an "instinctual reaction," suggesting that the contact was not voluntary and thus not knowing.

¶ 33 Defendant also denied telling the police officers that he pulled Mirella off the couch and grabbed her throat. He notes that he was the only eyewitness who testified at trial. Defendant thus concludes that, given his testimony and the "lack of incriminating evidence," the evidence was insufficient to prove beyond a reasonable doubt that he knowingly made contact of an insulting or provoking nature.

¶ 34 We reject defendant's argument. He fails to acknowledge that it was up to the jury to weigh the evidence and to resolve conflicts in the testimony. *Brown*, 2013 IL 114196, ¶ 48. While it is true that defendant was the only eyewitness to testify, his testimony was not the only evidence the jury had to consider. The jury heard from Mirella on the 911 recording, where she clearly stated, "My husband is very upset and he grabbed me by the neck." Officers Powell and Mellinger both testified that defendant admitted to grabbing Mirella's arm in anger, putting his hands around her throat, and pushing her against the wall. Given this evidence, the jury could have considered the content of the 911 recording as well as the photograph of Mirella's neck, credited the testimony of the officers over that of defendant, and found defendant guilty beyond a reasonable doubt of knowingly making insulting or provoking contact with Mirella.

¶ 35              C. Prosecutor's Comments During Closing Argument

¶ 36 We turn now to defendant's claims that the State committed both individual and cumulative error during its closing argument. He argues that the prosecutor improperly (1) inflamed the passions of the jury by commenting on the pernicious effects of domestic violence

on the children who were present during the altercation, (2) bolstered the credibility of Officers Powell and Mellinger based on their status as police officers, while intimating that defendant was untrustworthy because he was charged with a crime, and (3) implied that Mirella did not testify because of fear of more domestic violence. Defendant also argues that these alleged errors collectively deprived him of a fair trial.

¶ 37    Defendant concedes that he did not object at trial or in his posttrial motion to the prosecutor's comments. Issues not argued at trial and in a posttrial motion are forfeited for the purpose of appellate review. *Burman*, 2013 IL App (2d) 110807, ¶ 32. Defendant argues, however, that we should review these errors under the plain-error rule.

¶ 38    Plain error is a "narrow and limited exception" to the general rule of forfeiture. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). Plain error bypasses ordinary forfeiture principles, allowing a reviewing court to proceed on the merits of an unpreserved clear or obvious error when (1) the evidence is closely balanced and the error threatened to tip the scales of justice against the defendant or (2) the error is so egregious that it challenges the fairness of the trial and the integrity of the judicial process. *People v. Sebby*, 2017 IL 119445, ¶ 48. We begin a plain-error analysis by determining if there was reversible error in the first instance, as "[a]bsent reversible error, there can be no plain error." *People v. Cosby*, 231 Ill. 2d 262, 273 (2008).

¶ 39    Prosecutors are granted wide latitude in delivering closing arguments. *People v. Perry*, 224 Ill. 2d 312, 347 (2007). They may comment "on the evidence and on any fair and reasonable inference" that may be derived from that evidence. *Perry*, 224 Ill. 2d at 347. When reviewing for error, we look at the argument as a whole, rather than focusing only on select phrases or remarks. *Perry*, 224 Ill. 2d at 347. "A reviewing court will find reversible error based upon improper comments during closing arguments only if a defendant can identify remarks of

the prosecutor that were both improper and so prejudicial that real justice [was] denied or that the verdict of the jury may have resulted from the error." (Internal quotation marks omitted.) *People v. Evans*, 209 Ill. 2d 194, 225 (2004).

¶ 40                    1. Reference to Family Members During Closing Argument

¶ 41    Defendant asserts that the prosecutor improperly inflamed the passions of the jury by suggesting that defendant allowed his children to see him inflicting physical harm upon their mother. During his rebuttal closing argument, the prosecutor made the following remarks:

> "Defense counsel makes a good point. There were kids at the home that observed this, and that should just be one more reason for you to care about this case even if the victim isn't here today, because there are kids at this home, and they're his kids and they're her kids, and they had to observe what happened here. And maybe they're not here. Maybe the two-year-old is not here to come in and testify as to what daddy did to mommy that day, but you should care because the two-year-old had to see this happen, and the 15-year-old, the teenager, he or she had to watch this happen. And this did happen, and you know that this happened because you heard on the 9-1-1 [recording] that Mirella called in and told the 9-1-1 dispatcher."

These comments were largely invited by defendant's closing argument, in which he asked the jury to consider why Mirella and the children did not testify at the trial, suggesting that the State had not proved its case when it had produced no eyewitnesses. Because defendant attempted to take advantage of the children's presence during the incident (by contrasting it with their absence during the trial), the State was entitled to latitude to do likewise. See *People v. Collins*, 106 Ill. 2d 237, 267 (1985) (a defendant is not deprived of a fair trial when a prosecutor makes arguments that were invited or provoked by the defendant).

¶ 42    Notwithstanding that defendant invited the comments, he cites several cases in support of his argument: *People v. Wheeler*, 226 Ill. 2d, 92, 128 (2007) ("Closing argument must serve a purpose beyond inflaming the emotions of the jury."), *People v. Hope*, 116 Ill. 2d 265, 278 (1986) (uninvited intentional references to a victim's family that have no relevance to the defendant's guilt or innocence are not permissible), and *People v. Bernette*, 30 Ill. 2d 359, 370-74 (1964) (irrelevant and prejudicial references to a murder victim's family throughout the proceedings are fatal to a fair trial). Those cases are inapposite. Unlike in those cases, the prosecutor here did not dwell upon the children in an inflammatory manner. *Cf. Hope*, 116 Ill. 2d at 279 (drawing analogy to *Bernette*, in which "the defendant's conviction was reversed because there were numerous references throughout direct testimony and argument to the jury regarding the murder victim's young children"). While his comment about the two-year-old child testifying might have been tongue-in-cheek, he mentioned the children only incidentally. Indeed, the prosecutor immediately returned to the evidence when he reminded the jurors of what they heard on the 911 recording. Thus, the comments at issue did not constitute reversible error.

¶ 43                              2. Credibility of the Witnesses

¶ 44    Defendant next argues that the prosecutor improperly bolstered the credibility of Officers Powell and Mellinger based on their status as police officers, while impugning the credibility of defendant based solely on the fact that he was charged with a crime. The statement in question came during the State's initial closing argument:

> "So who is credible in this case? Is it the police officers, who have no reason to
> lie, who get up, they do their job, they talk to people, they interview witnesses, and they
> write a report. Are the police officers lying or is he lying? Because he says what the

police officers testified, that's not what he told them. But who has got a reason and who has got a motive to lie in this case? Is it the police officers who are just doing their job or is it the guy charged with domestic battery? You get to be the judge of who is credible in this case and who is not credible in this case."

¶ 45    In support of his argument, defendant cites *People v. Ford*, 113 Ill. App. 3d 659, 661-62 (1983) (five attempts during closing argument to bolster a witness's credibility based on her status as a police officer exceeded the boundaries of proper argument), *People v. Rogers*, 172 Ill. App. 3d 471, 478 (1988) (ineffective assistance of counsel when defense attorney failed to object to prosecutor's improper arguments that were not supported by the record), and *People v. Adams*, 2012 IL 111168 ¶¶ 16-20 (prosecutor's comment, that in order for the jurors to believe the defendant they also needed to believe that the testifying officers were willing to risk their jobs over 0.8 grams of cocaine, was impermissible speculation not based on evidence in the record). These cases are distinguishable. The comment here was confined to a single paragraph, not peppered throughout the argument. *Cf. Ford*, 113 Ill. App. 3d at 662 (prosecutor made "repeated references" to witness's status as police officer). Further, the jury could have reasonably found defendant guilty based on the recording alone, even without the officers' testimony that defendant admitted to "grabbing" Mirella. Defendant has not demonstrated that this comment might have affected the outcome of the trial. *People v. Coan*, 2016 IL App (2d) 151036, ¶ 25. Thus, the comment did not constitute reversible error.

¶ 46    Defendant further contends that the prosecutor encouraged the jury to consider the charges against defendant as creating an inference of guilt, contrary to IPI Criminal 4th No. 2.02 and in violation of defendant's right to a presumption of innocence. He cites *People v. King*, 248 Ill. App. 3d 253, 278 (1993) (the charging instrument does not constitute evidence and does not

create an inference of guilt), and *People v. Johnson*, 218 Ill. 2d 125, 140-41 (2005) (prosecutor made impermissible remarks during opening statement and closing argument that suggested defendant needed to prove his innocence). Here, the prosecutor merely commented that defendant was charged with a crime. He made no attempt, as did the prosecutor in *Johnson*, to shift the burden and suggest that it was up to defendant to prove his innocence. Defendant correctly observes that the jury was instructed that the charging instrument was not evidence, nor did it create an inference of guilt. The jury is presumed to follow the instructions given. *People v. Glasper*, 234 Ill. 2d 173, 201 (2009). The record contains ample evidence on which the jury could have found defendant guilty. Defendant has not demonstrated that his right to a presumption of innocence was undermined by the prosecutor's remarks.

¶ 47                                3. Mirella's Absence at the Trial

¶ 48    Defendant next complains that the prosecutor improperly referenced why Mirella did not appear as a witness:

> "Now, Mirella is not here today to tell her story for whatever reason, but use your common sense. Again, this is a domestic violence case. Why would a victim not show up at a domestic violence case? Well, use your common sense. That's all I can tell you about that. She's not here to testify today, but you got to hear her initial outcry on March 13, 2014. So whatever the reason she's not here, she did try to reach out to the police, she told her story, and [defendant] told this exact same story to the police when they first arrived on the scene. She's not here, but this did happen."

¶ 49    Defendant argues that Mirella's reason for not testifying was irrelevant and that the prosecutor intended these "ambiguous" remarks to convey their most "damaging meaning," that Mirella did not testify because she feared further domestic violence. In support he cites *Donnelly*

*v. DeChristoforo*, 416 U.S. 637, 646-47 (1974). In *Donnelly*, the defendant claimed that the prosecutor's ambiguous remark during closing argument deprived him of a fair trial. *Donnelly*, 416 U.S. at 638, 645. However, defendant's argument is actually undermined by the holding in *Donnelly*, that "[i]solated passages of a prosecutor's argument, billed in advance to the jury as a matter of opinion not of evidence," generally do not have a significant impact on a jury's deliberations. *Donnelly*, 416 U.S. at 646. Courts "should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning." *Donnelly*, 416 U.S. at 647.

¶ 50    The prosecutor here appeared to anticipate that the jury might question Mirella's absence, a reasonable concern, considering that she was the alleged victim. The prosecutor told the jurors to use their "common sense" as to why Mirella did not testify. Fear of further violence is one possible inference they could have drawn from the prosecutor's remarks, but the record here allowed that the jury might also have inferred that testifying was not in Mirella's interest because she and defendant were undergoing divorce proceedings, or that they now lived in different cities, or that she did not want to testify against the father of her child. It is not at all clear from the record that the prosecutor "intended" the remark to have its most "damaging meaning." Even if that were the prosecutor's intention, the court unambiguously instructed the jury before opening statements and immediately prior to closing arguments that the lawyers' arguments were not evidence and should not be construed as such. Following closing arguments, the court reminded the jury a third time: "Neither opening statements nor closing arguments are evidence, and any statement or argument made by the attorneys which is not based on the evidence should be disregarded." Under these circumstances, the remarks regarding Mirella's absence from the trial were not reversible error.

¶ 51    Even if we were to hold that any of the challenged remarks constituted reversible error, that would be only the first step of the plain-error analysis.  Plain error is a limited exception to procedural default, not a general saving clause.  *People v. Pastorino*, 91 Ill. 2d 178, 188 (1982). Again, it is invoked only where the evidence is closely balanced and the defendant is prejudiced, or where the error is so egregious that it threatens the fairness of the trial and challenges the integrity of the judicial process.  *Adams*, 2012 IL 111168, ¶ 21.

¶ 52    "In determining whether the evidence adduced at trial was close, a reviewing court must evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of it within the context of the case."  *People v. Sebby*, 2017 IL 119445, ¶ 53.  The evidence in this case, while not overwhelming, was not close.  The State presented evidence in the form of the 911 recording, which was a contemporaneous memorialization of the events immediately following the incident.  The content of the recording was corroborated circumstantially by the observations of Officers Powell and Mellinger, as well as their testimony of the statements defendant made to them.  Moreover, the photograph of Mirella's neck was objective proof of her account.  Defendant testified to an alternative version of events, but his testimony was not corroborated by physical evidence or other witnesses.  Thus, defendant has failed to meet the first prong of the plain-error rule.

¶ 53    Defendant has likewise failed to demonstrate plain error under the second prong of the rule.  The second prong requires structural error, which is extraordinarily serious error that renders the proceeding unfair, *i.e.*, "an error affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself."  (Internal quotation marks omitted.)  *People v. Johnson*, 2017 IL App (2d) 141241, ¶ 51.  The prosecutor's statements were not so egregious that they threatened the fairness of the trial or the framework of the trial

process. Moreover, the jurors were properly instructed that the lawyers' opinions were not evidence, that the jurors were the only judges of the believability of the witnesses, that defendant's testimony should be evaluated in the same manner as that of any other witness, and that the charging instrument was not evidence of guilt. As noted above, it is presumed that jurors follow instructions (*Glasper*, 234 Ill. 2d at 201), and defendant has not rebutted that presumption. Consequently, assuming *arguendo* that the comments were error, defendant has still failed to demonstrate plain error under either prong of the rule.

¶ 54                                     4. Cumulative Error

¶ 55     Defendant lastly argues that the collective nature of these alleged errors requires reversal. Defendant compares this case to *People v. Blue*, 189 Ill. 2d 99, 139-40 (2000), where our supreme court reversed a conviction of the murder of a police officer, based on "a pervasive pattern of unfair prejudice." The court in *Blue* held that the prosecutors argued blatantly "emotion-laden" themes that were not probative and that "nakedly" prejudiced the defendant. *Blue*, 189 Ill. 2d at 134. The prosecutors paraded the dead officer's bloodied police uniform, splattered with brain matter, in front of the jury. *Blue*, 189 Ill. 2d at 139. They invited the jurors to demonstrate their appreciation to the police force by convicting the defendant. *Blue*, 189 Ill. 2d at 139. They told the jurors that the dead officer's mother, father, and daughter needed to hear from the jury that they would get justice. *Blue*, 189 Ill. 2d at 128. They attempted to introduce evidence through themselves by making "testifying" objections. *Blue*, 189 Ill. 2d at 136. They shouted at a defense witness in open court. *Blue*, 189 Ill. 2d at 141. They threw photographic exhibits onto the table in front of defense counsel. *Blue*, 189 Ill. 2d at 141. Finally, they called one of the defendant's attorneys an expletive in the judge's chambers. *Blue*, 189 Ill. 2d at 141. *Blue* portrayed overbearing and egregious conduct that obscured and negated

the actual evidence. See *Blue*, 189 Ill. 2d at 140. This case is no *Blue*. The prosecutor did not engage in overbearing and systematic conduct specifically designed to obfuscate the evidence. To the contrary, the prosecutor highlighted evidence in the record and responded to defendant's arguments where necessary. The comments during closing argument, viewed individually or collectively, did not constitute reversible error and were not plain error.

¶ 56                                    III. CONCLUSION

¶ 57    For the foregoing reasons, we affirm the judgment of the circuit court of Kane County.

¶ 58    Affirmed.