2024 IL App (2d) 240073-U
No. 2-24-0073
Order filed November 13, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 22-DV-819 |
| NADA L. STEIER, | ) ) | Honorable Bianca Camargo, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BIRKETT delivered the judgment of the court.
Presiding Justice McLaren and Justice Hutchinson concurred in the judgment.

**ORDER**

¶ 1    *Held*: (1) The State disproved defendant's self-defense theory through the victim's testimony contradicting defendant's account that she struck the victim because he body-slammed her and she was afraid that he would harm her further.  (2) A text message from defendant to the victim did not violate the bar against propensity evidence where the trial court instructed the jury to consider the message only as evidence of consciousness of guilt, and any error in its admission was harmless.

¶ 2    Defendant, Nada L. Steier, was charged with two counts of domestic battery (720 ILCS 5/12-3.2(a)(1), (a)(2) (West 2020)) based on allegations that she caused bodily harm to (count I), and made physical contact of an insulting or provoking nature with (count II), her husband, Eric Steier, by pushing him in the chest and striking his head with her closed fist.  Following a jury trial

in the circuit court of Kane County, defendant was found not guilty of count I but guilty of count II. Defendant argues on appeal that (1) the State failed to prove beyond a reasonable doubt that she did not act in self-defense and (2) the trial court erred in admitting a text message that defendant characterizes as evidence of her prior "bad acts." We affirm.

¶ 3                        I. BACKGROUND

¶ 4      Before trial, the State filed a motion *in limine* seeking to admit into evidence a text message from defendant to Eric, stating, in pertinent part, "Please don't go to court tomorrow Eric. They could dismiss those charges and we can get on with our lives. I need to get a job and fight DCFS. I can't do that if you testify against me." By "DCFS," defendant presumably meant the Department of Children and Family Services. The State argued that the message was admissible as evidence of defendant's consciousness of guilt. The trial court granted the State's motion over defendant's objection.

¶ 5      Also before trial, defendant gave notice that she intended to present the affirmative defense of self-defense.

¶ 6      At trial, Eric testified that, in November 2022, he and defendant were living in the same house in North Aurora but had been "separated physically *** for a number of years." Defendant slept with the couple's son, D.S., in his bedroom, and Eric slept in a separate bedroom.

¶ 7      According to Eric, at about 11 p.m. on November 26, 2022, he was in his bedroom, getting ready to sleep. Defendant, who had been drinking, was with D.S. in his bedroom. Eric heard a scream and crying. He went to D.S.'s bedroom and observed defendant yelling while mopping up some water that D.S. had spilled. D.S. was crying. Eric brought D.S. into his bedroom, closed the door, and lay in bed with him. Defendant came into the room. She was "very aggravated." Eric testified, "[Defendant] started saying mean things about me, about my mother, and sticking her

finger in my face close to my eye." According to Eric, defendant somehow slipped and hit Eric's lip with her finger, causing a small cut that started to bleed. Eric "instinctively pushed [defendant] back as best [he] could." She fell against a wall and slid down on "the rear of her end." Asked how much force he used in pushing defendant, Eric replied, "It couldn't have been much because I was not in a very good position to use any force. [Defendant] was drunk[,] which is probably why she fell." Eric then exited the bed and pushed defendant out of the room. He testified that he was "using [his] hands, kind of like a linebacker or a football player does, to get her out of the room." Asked how much force he used, Eric responded, "I was making contact with her. I was using my body to try to—to lightly—you know, my weight to get her out of the room." Once defendant was out of the room, Eric "closed the door, and [defendant] slipped around [him] and opened the door actually with a lot of force." Defendant made fists with both hands and struck Eric in the head five times. Eric then contacted the police. Eric testified that, sometime after defendant struck him, the back and sides of his head felt sore and tender, and he developed a welt on his forehead. Over defendant's renewed objection, the text message in which defendant asked Eric not to come to court was admitted into evidence and published to the jury.

¶ 8    On cross-examination, Eric admitted that he may have joked with the police when they responded to his call. He explained that he uses humor to deal with stress. Eric acknowledged that, at the time of trial, he and defendant were in the midst of divorce proceedings.

¶ 9    After Eric completed his testimony, the trial court orally instructed the jury as follows regarding the text message admitted into evidence:

"[E]vidence has been received that the defendant has been involved in conduct other than that charged in the complaint. This evidence has been received on the issue of defendant's consciousness of guilt and may be considered by you only for that limited purpose.

It is for you to determine whether the defendant was involved in that conduct; and if so, what weight should be given to this evidence on the issue of consciousness of guilt."

¶ 10　　North Aurora police officer Matthew Johnson testified that, at about 11:30 p.m. on November 26, 2022, he responded to a report of domestic violence at defendant and Eric's home. Johnson testified that defendant was screaming and belligerent. Eric was calmer. (When later called as a witness by the defense, Johnson testified that Eric was laughing and joking when Johnson spoke with him.) Johnson spoke with defendant outside Eric's presence. Johnson detected a strong odor of alcohol "coming from her breath or facial region" and noticed that her eyes were "watery or glossy." In Johnson's opinion, defendant was under the influence of alcohol. After taking a statement from Eric, Johnson spoke with defendant again and advised her that he was placing her under arrest. Johnson's body camera recorded his interaction with defendant just before her arrest. The recording was admitted into evidence and played for the jury. On the recording, defendant told Johnson, "I would've knocked the f*** out of him and tell you to your face. The way he do me with my son. And won't let me leave this m*** house. *** I want him gone out of my life. *** That's all the f*** I want."

¶ 11　　Aurora police officer Gomez (whose first name was not given) testified that, on November 26, 2022, he was employed by the North Aurora Police Department. He responded to the incident at defendant and Eric's home. He recalled smelling the odor of an alcoholic beverage emanating from defendant.

¶ 12　　Defendant testified that, on the night of the incident, she and Eric were in her downstairs bedroom, arguing over their marital problems. At one point, Eric left the room and went upstairs to his bedroom. Defendant followed Eric to his room. As they spoke, Eric became "upset" and "wanted [defendant] to get out of the room." He "grabbed both [of] [her] hands and he started

digging his nails into both of [her] wrists and pushing [her] into the hallway." Defendant was "trying to get away from him, and [she] couldn't" because his grip was too strong. Eric released her wrists and grabbed her elbows. She tried again to get away but could not. Eric then lifted her and body-slammed her onto the hardwood floor in the hallway. She landed on her back about one foot from the staircase. Fearing that Eric was about to kick her down the stairs, she got to her feet and started hitting Eric's chest so that she could get away from him. Eric went back into his bedroom and closed the door. Defendant testified that, as a result of the incident, she sustained cuts on her wrists from Eric's fingernails and bruises to her palm, thigh, and ankles. She photographed her injuries on the day after the incident. The photographs were admitted into evidence.

¶ 13    During the State's rebuttal case, Johnson testified that, when he spoke to defendant at the scene, she never mentioned that Eric body-slammed her. Also, Johnson did not observe any injuries to defendant's upper extremities, which were visible because she was wearing a tank top.

¶ 14    The trial court instructed the jury on self-defense. The court also instructed the jury again to consider the text message only as evidence of consciousness of guilt. The jury found defendant guilty of domestic battery based on insulting or provoking contact but not guilty of domestic battery based on bodily harm.

¶ 15                                II. ANALYSIS

¶ 16    Defendant first argues that the State failed to prove her guilt beyond a reasonable doubt. The following principles govern our review of this argument:

> "A reviewing court will not set aside a criminal conviction unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. [Citation.] When the sufficiency of the evidence is challenged, ' "the relevant question is

whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' (Emphasis in original.) [Citation.] '[A] reviewing court will not substitute its judgment for that of the trier of fact on issues involving the weight of evidence or the credibility of witnesses.' [Citation.]" *People v. Ryan*, 2023 IL App (2d) 220414, ¶ 11.

¶ 17 Defendant's challenge to the sufficiency of the evidence is that the State failed to prove beyond a reasonable doubt that she did not act in self-defense. "Self-defense is an affirmative defense, and once a defendant raises it, the State has the burden of proving, beyond a reasonable doubt, not only all the elements of the charged offense, but also that the defendant did not act in self-defense." *People v. Martinez*, 2019 IL App (2d) 170793, ¶ 70. A person acts in self-defense when "(1) the person is threatened with unlawful force, (2) the person threatened is not the aggressor, (3) the danger of harm is imminent, and (4) the use of force is necessary." *People v. Brown*, 406 Ill. App. 3d 1068, 1081 (2011). Factors relevant to the trier of fact's determination on the question of self-defense include "the probability or improbability of defendant's account, the circumstances of the crime, the testimony of the witnesses, and witness credibility." *Id.*

¶ 18 Defendant and Eric offered dramatically different accounts of the altercation leading to the charges against defendant. Defendant testified that she was speaking with Eric when he became upset and grabbed her wrists so firmly that she could not release herself. He then pushed her out of his room and body-slammed her on the hallway floor. Fearing he would kick her down the stairs, she stood up and struck him in the chest to get away from him. In contrast, Eric testified that defendant, who had been drinking, came to his bedroom and aggressively pointed her finger in his face. After she accidentally cut his lip with her fingernail, he pushed her away, and she slid

to the floor. He then pushed her out of the room and closed the door, but she reentered and struck him in the face.

¶ 19 Eric's account contradicted defendant's testimony that she struck him to get away after he grabbed and held her (first by the wrist, then by the elbows), pushed her into the hallway, and body-slammed her. In both accounts of the altercation, Eric pushed defendant while they were in his bedroom. Nonetheless, Eric's testimony that he pushed her with his hands "like a linebacker or a football player does" contradicted her testimony that he grabbed and prevented her from pulling away. Also, Eric testified that, after he removed her from the bedroom, defendant returned and struck him in the face. His account belies her claim that she struck him because she was in danger of being kicked down the stairs. Thus, his testimony was sufficient to disprove that defendant acted in self-defense. See *People v. Savickas*, 230 Ill. App. 3d 322, 330 (1992) ("The issue of self-defense is one of fact [citation], and where *** [the] defendant's testimony is contradicted, the trier of fact need not believe defendant.").

¶ 20 Defendant, however, argues that Eric's testimony was not credible. She notes that the jury found her not guilty of domestic battery causing bodily harm. According to defendant, "[w]here a jury returns a not guilty verdict on a more serious count, it may indicate the jury did not find the complaining witness entirely credible." However, the jury's finding that the victim did not suffer bodily harm does not entail that we reject his entire account of the events of November 26, 2022.

¶ 21 Defendant also contends that (1) the parties' pending divorce made Eric a biased witness and (2) Eric's "jocularity" when speaking with the police undermined his credibility. Those were matters for the jury to consider. The jury evidently credited Eric's testimony, and it is not our function to substitute our judgment for the jury's on the credibility of witnesses. See *Ryan*, 2023

IL App (2d) 220414, ¶ 11.  Accordingly, we conclude that the evidence was sufficient to prove that defendant did not act in self-defense.

¶ 22    Defendant's next argument pertains to the admission into evidence of the text message from defendant asking Eric not to come to court.  The text message referred to defendant needing to "fight" with DCFS.  Defendant argues that this reference was impermissible evidence of "bad acts."  Rule 404(b) of the Illinois Rules of Evidence (eff. Jan. 1, 2011) provides, in pertinent part, that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  Defendant argues that the evidence implying she had done something to draw DCFS's attention violated this rule.  Defendant is mistaken.  The trial court twice instructed the jury to consider the text message only as evidence of consciousness of guilt, and the State reminded the jury again in its closing argument.  We presume that the jury followed the trial court's instructions.  See *People v. Camacho*, 2018 IL App (2d) 160350, ¶ 46.

¶ 23    In any event, "[t]he improper introduction of other-crimes evidence is harmless error when a defendant is neither prejudiced nor denied a fair trial based upon its admission."  *People v. Fountain*, 2016 IL App (1st) 131474, ¶ 71.  Such error is harmless "where there is no reasonable probability that, if the evidence had been excluded, the outcome would have been different."  *People v. Brown*, 2014 IL App (2d) 121167, ¶ 28.  Although the strength of the evidence against the defendant is a consideration in determining whether an error is harmless, reviewing courts also look to the error itself to determine whether it might have contributed to the conviction.  *In re Rolandis G.*, 232 Ill. 2d 13, 43 (2008).

¶ 24    Mindful of these principles, we conclude that the text message's vague, fleeting reference to defendant's "fight" with DCFS was harmless.  In its closing argument, the State did not mention the DCFS reference and, in fact, reminded the jury that it was allowed to consider the message

only as evidence of consciousness of guilt. Thus, even though the evidence against defendant was not overwhelming, it is not reasonably probable that the jury would have found defendant not guilty if the text message had not been admitted.

¶ 25                                    III. CONCLUSION

¶ 26     For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 27     Affirmed.