2020 IL App (2d) 170720-U
No. 2-17-0720
Order filed April 23, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16-CM-276 |
| DONALD LYN PRITCHARD, | ) ) ) | Honorable James D. Orel, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HUDSON delivered the judgment of the court.
Presiding Justice Birkett and Justice Brennan concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The State proved defendant guilty beyond a reasonable doubt of resisting a peace officer, as the evidence supported the reasonable inference that, by tensing his arms and pulling away, defendant resisted the officer's attempt to handcuff him; further, the trial court did not abuse its discretion in admitting testimony that defendant's prior complaints against the police department were unsubstantiated; and defendant showed no error in closing argument when the State used the terms "obstructing" and "obstructed" interchangeably with "resisting" and "resisted" and the jury was instructed to disregard the State's minor misstatements of the evidence.

¶ 2    Defendant, Donald Lyn Pritchard, appeals from his conviction, following a jury trial, of resisting a peace officer (720 ILCS 5/31-1(a) (West 2016)), arguing (1) the evidence was insufficient to prove him guilty beyond a reasonable doubt, (2) he was denied a fair trial where the

State made numerous improper remarks during closing argument, (3) the trial court erred by allowing improper testimony. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     Defendant was charged with four counts of resisting a peace officer (*id.*), stemming from his January 27, 2016, arrest at the Naperville Police Department. Count 1 alleged that defendant knowingly resisted arrest, in that he pulled away from Naperville police officer Alex Mumenthal, attempted to grab Mumenthal's hands, and had to be physically moved to a holding area in the jail. Count 2 alleged that defendant knowingly resisted arrest and transport, in that he pulled away from Mumenthal. Count 3 alleged that defendant knowingly resisted transport, in that he dragged his legs and went limp while Mumenthal was transporting him at Central Du Page Hospital. Count 4 alleged that defendant knowingly resisted arrest, in that he moved his body to defeat being placed in a restraint chair at the police department.

¶ 5     The jury found defendant guilty of count 2 and not guilty of counts 3 and 4. The trial court granted defendant's motion for a directed verdict as to count 1.

¶ 6               A. Relevant Evidence Presented at Trial

¶ 7     Naperville police deputy chief Jason Arres testified that, on January 27, 2016, he telephoned defendant to advise him that there was a warrant for his arrest. Although Arres did not normally call individuals to advise them of warrants, he had had many previous dealings with defendant and knew that he often drove two children to and from school. Arres did not want defendant to be pulled over and arrested in the presence of the children. A recording of the phone call was admitted as People's exhibit No. 1 and played for the jury.

¶ 8     On cross-examination, Arres testified that defendant began protesting outside of the Naperville Police Department in October 2015. Arres worked with defendant to make sure

defendant knew where he could legally stand and protest. In addition to protesting, defendant had filed multiple complaints with the Naperville Police Department. Arres recorded the January 27, 2016, phone call with defendant to protect himself, because "many of [the] complaints that [defendant has] made against our police are perceptions that he has or claims of the way he was or wasn't treated." Defendant was upset when Arres informed him about the warrant. Defendant arrived at the police department 30 minutes after the call.

¶ 9    On redirect examination, Arres was asked whether he investigated the previous complaints that defendant had made against the Naperville Police Department. Defense counsel objected based on the "[r]elevance of the substance of the internal investigation." During a sidebar conference, the trial court indicated that it had to decide whether the prejudice outweighed the probative value. The State commented that it was "not going to get into any specifics." The court found: "They have a right to deal with that issue, but not the specifics. I will sustain it in part where it's limited, but I will overrule it, your objection, with that limitation." Arres was then asked the following question: "[W]ithout getting into any specifics, did any of these complaints made by the Defendant, did you find that any of these complaints are substantiated?" Arres responded, "No, they were not."

¶ 10    Naperville police sergeant Matt Egan testified that, at about 6:14 p.m. on January 27, 2016, he was about to leave a restricted area of the police department through a secured door that opened to the public "bonding lobby," when he noticed the handle on the door shaking. Egan opened the door and encountered defendant, who was standing in the lobby. Egan stated that defendant was "very agitated," "using swear words," and "talking very loud." Egan told defendant that he could not enter the police department through that door, but defendant walked toward him. Egan stuck his arm out and made contact with defendant's chest. Defendant was "yelling about the warrant,

about the Naperville Police Department using some swear words, very loud, very excitable." Egan did not call for backup, but five officers responded. Deputy Chief Anders informed defendant that he was under arrest. Egan approached defendant on his left side, while another officer approached defendant on his right side. Mumenthal approached defendant from behind and attempted to handcuff defendant. As he did so, defendant "attempted to pull his arms away and then locked up, tightened up his muscles and locked them up when we were trying to get his hands behind his back so Officer Momunthal [*sic*] could handcuff him." Egan further explained that defendant "kind of tensed his muscles up so it was hard to get the actual his wrists together to handcuff him." Defendant was "agitated, combative, yelling, using swear words." People's exhibit No. 2, a video of the encounter with defendant, was admitted into evidence and played for the jury. In the video, defendant can be seen bouncing up and down while being handcuffed. Egan testified that it took about 30 seconds to handcuff defendant.

¶ 11    Egan testified that defendant was placed in a restraint chair, transferred to a belly belt in handcuffs and leg shackles, placed in a police car, and transferred to the jail. Egan turned on his phone's audio recorder when they entered the detention facility with defendant. Egan did this because if he was too far away from his squad car, his audio recording system would not record. He wanted to record defendant's comments because what defendant was saying was not matching what was actually occurring. Defendant was yelling that his handcuffs were too tight, that the police were torturing him, and that the police were hurting him. He swore at the officers, called them "bigots" and "racist white cops," and yelled that he was going to sue them. People's exhibit No. 3, the cell phone audio recording, was admitted into evidence and played for the jury.

¶ 12    Mumenthal testified that, at about 6:15 p.m. on January 27, 2016, he was in the police station preparing for his shift when he heard a commotion near the bonding lobby door. He saw

defendant, who was screaming very loudly at Egan, trying to get into the police station. Mumenthal responded to the scene, along with several other officers, and was informed that there was a warrant out for defendant's arrest. Mumenthal then attempted to handcuff defendant. Mumenthal explained:

> "When I went to go handcuff [defendant] he would tense up his arms and what I mean by tense up his arms, it was almost as if he was like making a fist. Flexes his arms so it made it extremely difficult to get his arm in a position that we could effectively handcuff him and pulled away to a point where we wanted him to place his hands behind his back. He would tense up and push his arms away."

According to Mumenthal, it took three to four officers about 45 to 60 seconds to handcuff defendant.

¶ 13    Mumenthal testified that he, along with other officers, transported defendant to the Du Page County jail. Upon arrival, he advised that defendant was being uncooperative. Mumenthal was informed that defendant "needed to be cleared for incarceration," so he transported defendant to Central Du Page Hospital. While in the squad car, defendant continued to scream at the officers, stating that they were "bigots," "racists," and that they "just bought him a house in Naperville." As defendant was being escorted through the waiting room at the hospital, defendant screamed that the officers had "just assaulted him" and that the Naperville Police Department was "racist." In addition, defendant "went limp" and stated that the officers were tripping him.

¶ 14    At the close of the State's case, defendant moved for a directed verdict. The trial court granted the motion as to count 1. Defendant did not present any evidence.

¶ 15            B. Relevant Portions of State's Rebuttal Closing Argument

¶ 16    During rebuttal closing argument, in discussing the evidence related to count 3, alleging that defendant resisted a peace officer by dragging his legs and making his body go limp while being escorted at the hospital, the following colloquy occurred:

"THE STATE: ***

*** From one perspective you are being dragged; from one perspective you are planting your feet.  Semantics.  *He did obstruct justice—*

[DEFENSE COUNSEL]: Objection.

[THE STATE]: Obstruct the peace officer.

THE COURT: Basis?

[DEFENSE COUNSEL]: Misstating the charge.

THE COURT: Overruled.

[THE STATE]: *He was obstructing the peace officer* by not listening to his lawful commands."  (Emphases added.)

¶ 17    In discussing count 4, alleging that defendant resisted by moving his body as the police attempted to put him in a restraint chair, the State commented:

"You heard the recordings.  You heard him yelling.  This is what you heard himself himself [*sic*].  You just bought me a house in Naperville.  You heard him yelling.

My partner stopped those videos when he was yelling about his hands.  His handcuffs were not tight.  No one was touching him at that time.  *But that is what they want you to believe is that he was being beaten.*  No one was around him.  They stopped."  (Emphasis added.)

¶ 18    Later, the following also occurred during the State's rebuttal closing argument:

"[THE STATE]: ***

This case began when a judge found, a DuPage County judge found a lawful basis for the defendant's arrest and signed a complaint. He came in thirty minutes later and turned himself in. He resisted the arrest, even though he was in there to turn himself in on that warrant. He moved his arms. He pulled them away.

When confronted with the warrant signed by a DuPage County judge the defendant both resisted by taking steps in order to resist the lawful orders, that being put your hands behind your back, you are under arrest. *He also obstructed by not following those lawful orders when told*, all right, we are doing our job—

[DEFENSE COUNSEL]: Objection. There has been no testimony of what they said to [defendant] of that.

THE COURT: Again, if there is no such evidence, the jury is to disregard that statement. Overruled.

[DEFENSE COUNSEL]: *The defendant obstructed when he was told to walk*, it was said. You have got to walk. We are following.

* * *

But he was told simple acts: Walk. What does he do? Does he plant his feet, does he drag his feet? I know what he does do. *He obstructs.* He does not follow those lawful orders." (Emphases added.)

¶ 19    C. Posttrial Proceedings

¶ 20    Defendant moved for a new trial or judgment notwithstanding the verdict. The trial court sentenced him to 26 days in jail and to 12 months' conditional discharge. The court also ordered that defendant participate in the Sheriff's Work Alternative Program (SWAP). Defendant moved for reconsideration of this sentence. On September 12, 2017, the court denied defendant's motion

for a new trial and granted his motion for reconsideration of sentence, ordering defendant to complete 80 hours of public service in lieu of participating in SWAP.

¶ 21    Defendant timely appealed.

¶ 22                                II. ANALYSIS

¶ 23            A. Sufficiency of the Evidence

¶ 24    Defendant argues that the evidence was insufficient to prove him guilty beyond a reasonable doubt of resisting a peace officer.  We disagree.

¶ 25    When we review a challenge to the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  The trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and determining what inferences to draw, and a reviewing court ordinarily will not substitute its judgment on these matters for that of the trier of fact.  *People v. Cooper*, 194 Ill. 2d 419, 431 (2000).  A reviewing court will not set aside a criminal conviction unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt.  *Collins*, 106 Ill. 2d at 261.

¶ 26    We conclude that the evidence, when viewed in a light most favorable to the State, was such that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  A person commits the offense of resisting or obstructing a peace officer if he or she "knowingly resists or obstructs the performance by one known to the person to be a peace officer *** of any authorized act within his or her official capacity."  720 ILCS 5/31-1(a) (West 2016).  "[A] physical act of resistance or obstruction [is] a physical act that impedes, hinders,

interrupts, prevents, or delays the performance of the officer's duties, such as by going limp or forcefully resisting arrest." *People v. Agnew-Downs*, 404 Ill. App. 3d 218, 226 (2010). " 'Resisting' or 'resistance' means withstanding the force or effect of or the exertion of oneself to counteract or defeat." *Id.* Here, the evidence established that, as Mumenthal was in the process of arresting defendant and attempting to handcuff him, defendant tensed and flexed his arms to prevent Mumenthal from doing so. Defendant also pulled away from Mumenthal and repeatedly jumped up and down. Any rational trier of fact could find this evidence sufficient to establish that defendant committed an act of physical resistance.

¶ 27    Nevertheless, defendant argues that his "acts of tensing and trying to pull away from Mumenthal were not voluntary acts of resistance undertaken to counteract or defeat his arrest." To be sure, "a defendant is not criminally liable for an involuntary act." *People v. Martino*, 2012 Il App (2d) 101244, ¶ 13. "Involuntary acts are those that 'occur as bodily movements which are not controlled by the conscious mind.' " *Id.* (quoting *People v. Grant*, 71 Ill. 2d 551, 558 (1978)). "Examples of involuntary acts include those acts performed while a defendant is convulsing, sleeping, unconscious, under hypnosis, or seizuring." *Martino*, 2012 Il App (2d) 101244, ¶ 13. "Acts that result from a reflex or that 'are not a product of the effort or determination of [the defendant], either conscious or habitual,' are also considered involuntary acts." *Id.* (quoting 1 Wayne R. LaFave, Substantive Criminal Law § 6.1(c), at 426 (2d ed. 2003)). According to defendant, his "acts were a reflexive response to the pain [he] was experiencing as Mumenthal handcuffed him." The evidence does not support this argument. When viewed in a light most favorable to the State, the evidence established that defendant tensed his arms and pulled away from Mumenthal while bouncing up and down. Even assuming defendant experienced some

degree of pain during the handcuffing process, the evidence simply does establish that defendant's response was " 'not a product of the effort or determination of' " defendant. *Id.*

¶ 28    Defendant also argues that his acts did not actually impede or delay his arrest, as the video shows that it took Mumenthal no more than 20 seconds to handcuff him. Defendant does not cite any authority to support this argument and thus has forfeited it. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (failure to cite authority in support of appellate argument waives or forfeits the contention on appeal). In any event, as the State notes, the statute does not specify a minimum duration for an act of resistance. The evidence sufficiently established that defendant's acts impeded his arrest.

¶ 29    Accordingly, we conclude that, viewed in the light most favorable to the State, the evidence was sufficient to prove defendant guilty beyond a reasonable doubt of resisting arrest.

¶ 30                B. Propriety of the State's Remarks During Rebuttal Closing Argument

¶ 31    Defendant next contends that he was denied a fair trial, because the trial court erred by allowing certain comments made by the State during rebuttal closing argument where the State used the term "obstructing" or "obstructed" rather than "resisting" or "resisted." Defendant also argues that it was improper for the State to argue that defendant refused to follow the officer's order to put his hands behind his back and that the defense wanted the jury to believe "that [defendant] was being beaten," when there was no evidence to support those assertions.

¶ 32    Initially, we address our standard of review. Defendant, citing *People v. Wheeler*, 226 Ill. 2d. 92, 121 (2007), argues that our standard of review is *de novo*. However, because the *Wheeler* court also cited with approval *People v. Blue*, 189 Ill. 2d 99 (2000), which applied an abuse-of-discretion standard, courts have found that, as argued by the State, the issue as to the appropriate standard of review is unsettled. See *People v. Burman*, 2013 IL App (2d) 110807, ¶ 26; *People v.*

*Maldanado*, 402 Ill. App. 3d 411, 421-22 (2010). We agree that the issue remains unsettled. But, because we would reach the same result under either standard, we need not resolve the issue. See *Burman*, 2013 IL App (2d) 110801, ¶ 26.

¶ 33    Next, we note that defendant has failed to preserve all but one of the challenged remarks concerning obstruction. To preserve an issue for review, a defendant must both offer a specific objection at trial and raise the matter in a posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Conceding forfeiture, defendant asks us to review the challenged remarks under the plain-error doctrine, which allows courts to consider forfeited issues when (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Under both prongs, the defendant bears the burden of persuasion. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). We begin a plain-error analysis by determining if there was reversible error in the first instance, as "[a]bsent reversible error, there can be no plain error." *People v. Cosby*, 231 Ill. 2d 262, 273 (2008).

¶ 34    "Prosecutors are afforded wide latitude in closing argument." *People v. Wheeler*, 226 Ill. 2d at 123. In reviewing comments made in closing argument, we ask whether the comments engendered substantial prejudice against the defendant such that it is impossible to say whether a verdict of guilt resulted from them. *Id.* "[T]he closing arguments of both the State and the defendant must be examined in their entirety and the comments complained of must be placed in their proper context." *People v. Rush*, 294 Ill. App. 3d 334, 340 (1998). "If the jury could have reached a contrary verdict had the improper remarks not been made, or the reviewing court

cannot say that the prosecutor's improper remarks did not contribute to the defendant's conviction, a new trial should be granted." *Wheeler*, 226 Ill. 2d at 123. Improper comment is plain error only when it is either so inflammatory that the defendant could not have received a fair trial or so flagrant as to threaten a deterioration of the judicial process. *Burman*, 2013 IL App (2d) 110807, ¶ 45.

¶ 35    Defendant argues that it was error for the State to remark that defendant "obstructed" or was "obstructing," because he was charged with only "resisting." According to defendant, the State misstated the charge. In support of his argument, defendant relies on *People v. Lauer*, 273 Ill. App. 3d 469 (1995). There, the defendant argued that his convictions must be reversed, because the complaints charging him with "resisting a peace officer" failed to specify the physical acts committed. *Id.* at 473. In considering the issue, the court noted:

> "A complaint that uses the statutory language to charge resisting or obstructing a peace
> officer in the disjunctive is too general because resisting can be different from obstructing,
> which can involve a wide range of physical acts. Obstructing a peace officer is much
> broader than resisting a peace officer." *Id.* at 474

The court found that a complaint that sets out the charges in the disjunctive must specifically describe the physical act committed that constituted resisting or obstructing. However, the court found that a complaint that charges resisting need not specify the physical act, because resisting necessarily involves a physical struggle, and thus sufficiently informs the defendant of the precise crime with which he was charged. *Id.*

¶ 36    Although *Lauer* supports the proposition that the word "obstruct" encompasses a broader range of physical acts than the word "resist," here, each count specifically alleged defendant's physical act that constituted resisting. Thus, regardless of whether the State used the term "resist"

or "obstruct" in closing argument, the State was required to prove the specific act alleged. Indeed, in each instance where the State used the term "obstruct," the focus of the State's argument was on the specific act committed by defendant. Moreover, the record makes clear that the State repeatedly used the words "resist," "resisting," or "resisted" throughout its closing argument. Thus, even if its use of the word "obstruct" was improper, we cannot say that the jury would have reached a different result had it not been used. Having found no error, we conclude there can be no plain error.

¶ 37    Defendant next contends that it was improper for the State to argue in closing that defendant refused to follow the officer's order to put his hands behind his back and that the defense wanted the jury to believe "that [defendant] was being beaten," when there was no evidence to support those assertions.

¶ 38    The prosecutor has a right to comment upon the evidence presented and make any reasonable inferences arising from it, even if those inferences are unfavorable to the defendant. *Rush*, 294 Ill. App. 3d at 340-41. A trial court's sustaining of an objection to improper argument is generally sufficient to cure the error. *People v. Arman*, 131 Ill. 2d 115, 127 (1989). Further, "if the trial court instructs the jury that closing arguments are not evidence, any error resulting from the prosecutor's remarks is considered cured." *Rush*, 294 Ill. App. 3d at 341.

¶ 39    First, with respect to the State's remark that defendant resisted "the lawful orders, that being put your hands behind your back," the record is clear that, upon defendant's objection, the court instructed the jury that "if there is no such evidence, the jury is to disregard that statement." Accordingly, we find that instruction sufficient to cure any alleged error.

¶ 40    We next consider defendant's argument that the State improperly commented that the defense wanted the jury to believe "that [defendant] was being beaten." Defendant argues that he

never suggested that he was being beaten by the officers. Defendant did not object to this comment and thus has forfeited his challenge to it. Nevertheless, we conclude that it was a reasonable inference to make, especially given defendant's comments at the hospital that the officers had "just assaulted him." In any event, the jury was instructed that closing arguments are not evidence. Thus, any possible error was cured.

¶ 41　　　　C. Admissibility of Testimony Concerning Complaints Made by Defendant

¶ 42　Last, defendant argues that the trial court erred in permitting the State, over objection, to elicit testimony from Arres that he had investigated three of the complaints defendant had filed against Naperville police officers and found them to be "unsubstantiated." He asserts that the testimony was irrelevant, because it had no tendency to make it more or less probable that defendant resisted arrest, and it impugned his character by implying that he had falsely accused police officers of misconduct unrelated to his arrest. The State responds that defendant opened the door to the State's limited inquiry. We agree with the State.

¶ 43　"We will not disturb a ruling on the admissibility of evidence absent an abuse of discretion." *People v. Camacho*, 2018 IL App (2d) 160350, ¶ 23. "There is no question that a defendant can open the door to the admission of evidence that, under ordinary circumstances, would be inadmissible." *People v. Harris*, 231 Ill. 2d 582, 588 (2008).

¶ 44　Here, when cross-examining Arres, defense counsel elicited testimony that defendant had often protested in front of the police station and had filed complaints against the Naperville Police Department. This testimony certainly suggests wrongdoing and a pattern of mistreatment on the part of the Naperville Police Department toward defendant. Thus, the trial court acted well within its discretion in allowing the State to conduct a limited inquiry into whether defendant's claims were substantiated.

¶ 45    Accordingly, based on the foregoing, we find no error.

¶ 46                              III. CONCLUSION

¶ 47    For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 48    Affirmed.