2022 IL App (2d) 210441-U
No. 2-21-0441
Order filed September 23, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16-CF-1346 |
| KEVIN J. HAMILTON, | ) ) ) | Honorable Donald M. Tegeler Jr. |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Jorgensen and Birkett concurred in the judgment.

**ORDER**

¶ 1   *Held*: (1) Defendant's eight-year prison sentence imposed after revocation of his probation for attempted armed robbery was intended as punishment for the original offense and not for his substantial misconduct while on probation, which the trial court emphasized only to show defendant's lack of rehabilitative potential. (2) Defendant's sentence, which was below the midpoint for the offense, was not excessive given the significant aggravating factors.

¶ 2   Defendant, Kevin J. Hamilton, appeals a judgment revoking his probation for attempted armed robbery (720 ILCS 5/8-4(a), 18-2(a)(2) (West 2016)) and resentencing him to eight years' imprisonment.   On appeal, defendant contends that his sentence was improperly imposed as

punishment for his conduct while on probation and not for the underlying offense. Defendant also argues that his sentence is excessive. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     On November 9, 2016, defendant pleaded guilty to attempted armed robbery in this case and aggravated robbery in case No. 16-CF-1347. The State presented the following factual basis for the former plea in this case. On August 6, 2016, defendant, while dressed in a hooded sweatshirt that covered his face, was with a friend in a vehicle outside the Circle K gas station in Elgin. Defendant was given a gun with which to threaten the clerk and demand money. He exited the vehicle and approached the building but left without committing the robbery. The factual basis for the plea in case No. 16-CF-1347 was that, on August 7, 2016, defendant, while wearing a sweatshirt with a hood that concealed his face, entered a 7-Eleven store, approached a clerk behind a counter, displayed what appeared to be a real gun, and obtained $150 in cash. Per the parties' agreement, the trial court sentenced defendant to concurrent probation terms of 48 months.

¶ 5     On May 30, 2017, the State petitioned to revoke defendant's probation in this case.[1] The State alleged that, on May 3, 2017, defendant failed to report for an appointment with his probation officer; that he had tested positive for marijuana and failed to show proof that he had started treatment as ordered; and that, on February 17, 2017, and April 19, 2017, he tested positive for tetrahydrocannabinol (THC). On August 16, 2017, the State again petitioned to revoke defendant's probation, alleging that he had failed to undertake required evaluations and to participate in any recommended treatment based upon the evaluations. The State also alleged that, on June 7 and July 17, 2017, defendant tested positive for THC. On September 11, 2017, defendant

_____

[1]No petition to revoke defendant's probation in case No. 16-CF-1347 is at issue on this appeal.

admitted the violations, and his probation was continued. He was ordered to obtain a drug evaluation by October 15, 2017.

¶ 6    On November 13, 2017, the State again petitioned to revoke defendant's probation, alleging that he failed to report for an office appointment and drug test on October 23, 2017, failed to undertake evaluations promptly, and tested positive for THC on October 16, 2017. On November 1, 2018, defendant stipulated to the allegations and was ordered to complete a drug and alcohol evaluation, with all terms of the original probation remaining in effect.

¶ 7    On July 2, 2019, the State petitioned to revoke defendant's probation. The petition alleged first that defendant had violated his probation terms in that, on June 20, 2019, Elgin police arrested him for resisting or obstructing a peace officer and obstructing identification (case No. 19-CM-1575). It alleged second that defendant had failed to report for appointments with the probation department on November 1, 2018, and May 31, 2019.

¶ 8    On July 25, 2019, the State filed another revocation petition, alleging first that, on July 21, 2019, defendant was arrested for unlawful use or possession of weapons or ammunition by a convicted felon and two counts of aggravated unlawful use of a weapon (case No. 19-CF-1441).

¶ 9    On March 31, 2021, the State filed an amended petition alleging that defendant (1) committed obstructing identification (case No. 18-CM-2390), (2) committed resisting or obstructing a peace officer (case No. 19-CM-1575), (3) committed unlawful possession of a weapon by a felon (case No. 19-CF-1441), (4) failed to meet with his probation officer on May 31, 2021, and (5) failed to undergo a drug and alcohol evaluation.

¶ 10    On April 29, 2021, defendant stipulated to having committed obstructing identification and resisting or obstructing a peace officer. The trial court continued the cause for the preparation of a presentencing investigation report (PSIR) and a resentencing hearing.

¶ 11    The PSIR, dated June 16, 2021, stated in part as follows. Defendant was born August 8, 1997. He had no juvenile record. Before being placed on probation in 2016, he had no adult criminal record. Since then, his pending cases included case Nos. 18-CM-2390, 19-CM-1575, and 19-CF-1441, and a 2020 Cook County charge of robbery, allegedly committed on October 24, 2017.

¶ 12    Defendant reported that he dropped out of high school in his senior year because, due to his poor grades, the school did not allow him to play basketball. He had not acquired his GED. His longest period of employment was three months, at Walmart, in the winter of 2016-17. He last worked in June 2020, for a temporary agency. Since being sentenced to probation, he had been homeless at times. He was residing with his ex-fiancée rent-free.

¶ 13    Defendant reported that he had had no relationship with his father since his early youth. He no longer had contact with the man who had fathered his two youngest siblings. In 2019, defendant's grandparents, uncle, baby brother, and daughter all died.

¶ 14    Defendant told the probation officer that this was his first felony case and that he " 'messed up' " because he was " 'young and dumb' " and was around the " 'the wrong people.' " He told the probation officer that he did not feel that "the violations [were] fair in these cases" and he "indicated a lack in personal control over what he can do to make his life better for himself."

¶ 15    The PSIR stated that assessments placed defendant at a high risk to reoffend, given numerous factors, especially his education, employment, and family situation. Defendant's interview answers showed "some criminal attitudes and behavioral patterns," as when he said that the probation-violation findings were not fair and that he could not do much to help himself.

¶ 16    On June 17, 2021, the trial court held a resentencing hearing *in absentia*. Alexis Monahan, defendant's probation officer since March 2019, testified that, in September 2019, defendant was

ordered to undergo a drug and alcohol evaluation, as he had earlier tested positive for drugs. To Monahan's knowledge, defendant never completed the evaluation. In Monahan's opinion, defendant was not a good candidate for probation, given his many violations.

¶ 17     Andrew Lamela, a St. Charles police detective, testified that, on August 7, 2016, he participated in an investigation of the armed robbery of a 7-Eleven store. After learning that defendant was a suspect, Lamela located him in an apartment with brothers Jeremy and Timothy Jones, who had reportedly been with him at the Circle K store incident the previous evening. Later, Lamela interviewed defendant. Defendant admitted to committing the armed robbery. He appeared sincerely remorseful. Defendant said that Jeremy and Timothy had nothing to do with the robbery and that he did not threaten the clerk but apologized to him. Defendant told Lamela where he had thrown the gun, and officers who recovered it found that it was inoperable. The clerk told officers that he had not known that the gun was inoperable.

¶ 18     Heather Lencioni of the Elgin police department testified that, on August 6, 2016, she was the lead detective in the investigation of the Circle K incident. In an interview, defendant told police that Jeremy gave him the hood and the gun but that, as he walked up to the store, he got cold feet and did not go in. The cashier never knew that a robbery had been contemplated.

¶ 19     West Dundee police officer John Scheffler testified that, on August 26, 2018, he and two other officers responded to a report of a disturbance at an apartment building. A woman allowed them inside. She said that earlier, Malik Blackwell had been in the apartment. The other officers met with a man in the parking lot. He told them he was Malik Blackwell and gave a purported date of birth. The officers left the scene. Later, they learned that the man was defendant and that he had two outstanding warrants at the time.

¶ 20    Elgin police officer Benavidez testified that, on June 20, 2017, he responded to a report of a disturbance at an apartment complex. When he arrived, he saw defendant run out of some bushes, where he had been hiding from security personnel. Defendant told Benavidez that his name was Malik Blackwell, and he supplied his purported birthdate. Benavidez checked and found no record on file. He asked defendant to make sure that he had given the correct information. Defendant ran into the apartment complex. Later, police caught him. At the jail, they learned his real identity. There were outstanding warrants for his arrest.

¶ 21    Three Kane County deputy sheriffs, Luke Weston, Steve Benson, and Ryan Monaghan, testified about the July 21, 2019, incident underlying case No. 19-CF-1441. (We note that the trial court disclaimed reliance on this evidence in resentencing defendant.) At about 8:30 p.m., Weston was on patrol when he saw defendant looking at him out of a Chevrolet Equinox that was being driven alongside his squad car. Weston eventually pulled over the Equinox for a traffic violation. Four men were in the car. Defendant was in the front passenger seat. With Benson's assistance, Weston ordered the men out. Inspecting the car, Weston found, under the front passenger seat, a functioning gun with an extended magazine. The barrel of the gun was facing the rear of the car. None of the occupants admitted to possessing the gun or knowing anything about it. None had a valid firearm owner's identification card. On July 22, 2019, defendant told Monahan that, when Weston started pursuing the Equinox, the backseat passengers were trying to get him to take the gun and run away with it but he refused. Defendant initially denied knowing about the gun but later admitted that he had known about it for four days before the stop.

¶ 22    After hearing arguments, the court stated as follows. There was one factor in mitigation: defendant had no juvenile or prior adult record. In aggravation, the court found that a substantial

sentence was necessary to deter others, imprisonment was necessary to protect the public, and probation or conditional discharge would deprecate the seriousness of the offense.

¶ 23    The court turned to the history of the case since the original order of probation in 2016. Several petitions to revoke probation had been filed, based on violations that, in large measure, defendant admitted. Defendant had missed several hearings and had failed to appear for the resentencing hearing despite being admonished about sentencing *in absentia*. The court continued:

> "Now, just that alone, while on probation, those are simple court orders. Not one of them did he ever follow. Not one. I've read the [PSIR] ***. It appears that he didn't follow any order we gave him. And I'm sorry, when you're 19 years old, you know when a judge tells you to do something, you ought to do it."

¶ 24    The court noted further that in case No. 18-CM-2390, defendant's conditional discharge was revoked because he did not follow court orders.

¶ 25    The court noted that defendant had pleaded guilty to obstructing identification and resisting or obstructing a peace officer. The court then commented, "I don't need to take 19 CF 1441 in great consideration. Whether the State proved it or not doesn't really matter to me." The important thing was that defendant had proven to the court "time and time and time and time again" that he would not "obey one thing I tell him to." The court continued:

> "And, yes, I am going to re-sentence him on an attempt[ed] armed robbery, where he was armed with a gun. He was using a hoody to disguise himself. Thank goodness he didn't go forward.
>
> But there are times when you have to take responsibility for your actions. And he has proven to me that he will never take responsibility for any of his actions on this case."

¶ 26    The court stated that defendant committed the 2016 attempted armed robbery not because he was young and dumb, as he claimed, but because he had decided to associate with the wrong people and to commit the offense. Defendant had "made the decision to arm himself with a weapon and he made the decision to try to hide his identification with a hooded sweatshirt pulled over his head and drawn tightly over it." Further, defendant had told the probation officer that life events were sometimes beyond his control. "In this case they weren't. He made the wrong decision." Finally, despite being ordered to attend the resentencing hearing, defendant was absent. The court sentenced defendant to eight years in prison.

¶ 27    Defendant moved to reconsider the sentence, contending in part that the court had placed excessive emphasis on his failure to comply with probation terms. The court denied the motion. Defendant timely appealed

¶ 28                                    II. ANALYSIS

¶ 29    On appeal, defendant contends first that the trial court abused its discretion by punishing him for his conduct while on probation and not for the underlying offense of attempted armed robbery. Defendant argues that the court's explanation of his sentence shows a preoccupation with his violations and little attention to the original offense. Defendant contends second that his sentence is excessive under all the circumstances.

¶ 30    Before we turn to the merits, we address a motion taken with the case. The State has moved to strike a citation in defendant's brief to an article, published on the Internet, relating to the rehabilitative potential of young adult offenders. The State notes that defendant did not cite this article in the trial court, and it contends that he may not do so for the first time here. As defendant notes, however, our supreme court has held that the rules of briefing "express[ ] no restriction on the nature or source of material which may be cited in support of an argument" and that "[a]n

opponent's questions regarding the caliber of the proponent's cited authority *** provide an insufficient basis to strike portions of the proponent's brief." *In re M.M.*, 156 Ill. 2d 53, 56 (1993). We deny the State's motion.

¶ 31    We address defendant's first claim of error.  We may not disturb a defendant's sentence unless the trial court abused its discretion.  *People v. Varghese*, 391 Ill. App. 3d 866, 876 (2008). In resentencing a defendant who has violated his probation, the court may consider his conduct while on probation as evidence of his rehabilitative potential.  *Id.*  However, the court may not punish the defendant for the conduct that gave rise to the probation violation.  *Id.*  Nonetheless, a sentence that is within the statutory range for the offense may not be set aside on review "*unless the reviewing court is strongly persuaded that the sentence imposed after revocation of probation was in fact imposed as a penalty for the conduct which was the basis of the revocation and not for the original offense.*" (Emphases in original.)  *People v. Young*, 138 Ill. App. 3d 130, 142 (1985); see *People v. Vilces*, 186 Ill. App. 3d 983, 986 (1989).  Given the deference accorded the trial court's exercise of its discretion, we cannot say the court erred.

¶ 32    We note that the sentencing range for attempted armed robbery was 4 to 15 years' imprisonment.  See 720 ILCS 5/8-4(c)(2) (West 2016) (sentence for an attempt to commit a Class X felony, such as armed robbery, is that for a Class 1 felony); 730 ILCS 5/5-4.5-30(a) (West 2016) (sentence for a Class 1 felony is 4 to 15 years' imprisonment).  Defendant's sentence was somewhat below the midpoint of this range.  We are not strongly persuaded that the trial court imposed this sentence as punishment for defendant's probation violations.  The court did not ignore the original offense, and it relied partly on factors in aggravation that pertained specifically to that offense.  Moreover, the court discounted the disputed and unclear facts of case No. 19-CF-1441. Finally, defendant's *undisputed* probation violations were both numerous and serious. This fact

explains why the court discussed the violations at length and supports the court's conclusion that defendant's rehabilitative potential was not impressive.

¶ 33    Initially, after finding in mitigation that defendant had no prior juvenile or criminal record, the court then found in aggravation that (1) a substantial sentence was needed to deter others from committing the same crime (730 ILCS 5/5-5-3.2(a)(7) (West 2016)), (2) imprisonment was necessary to protect the public (*id*. § 5-6-1(a)(1)), and (3) probation would deprecate the seriousness of defendant's conduct (*id*. § 5-6-1(a)(3)).  None of these aggravating factors had any clear connection to defendant's conduct while on probation, and the first factor was based on statutory language that pinpoints the offense for which a defendant is actually being sentenced.

¶ 34    The court then noted that, while on probation, defendant had consistently failed to follow court orders.  However, the court explicitly disclaimed reliance on case No. 19-CF-1441.  More centrally, defendant's repeated probation violations were a legitimate factor in assessing his rehabilitative potential, and they were substantial.  One day after committing the offense here, defendant admittedly committed an armed robbery in case No.16-CF-1347.[2]  In 2017, he admitted to violating his probation by twice failing to report to his probation officer and four times using illegal drugs.  In 2019, he committed obstructing identification and obstructing or resisting a peace officer.  It is no wonder that the trial court placed substantial weight on these numerous violations.  They showed defendant's inability to follow the law even after receiving numerous opportunities to avoid a prison sentence.  Nonetheless, nothing in the court's comments indicates that the

---

[2]The armed robbery was not technically a probation violation, as defendant committed it before he was sentenced to probation here.

sentence imposed was punishment for either the armed robbery in case No. 16-CF-1347 or the probation violations.

¶ 35    Indeed, directly after noting these violations, the court explicitly stated, "And yes, I am going to re-sentence [defendant] on an attempt armed robbery." The court then noted some facts of the offense: defendant carried a gun, he disguised himself, and he could have caused great harm had he gone through with the offense. Far from ignoring the offense for which defendant was being resentenced, the court stated explicitly that the offense was the basis of the sentence, and it backed up the statement by noting the seriousness of defendant's conduct on August 6, 2016.

¶ 36    Finally, the court noted defendant's unwillingness to take responsibility for his misconduct, including both the attempted armed robbery and the actions following that offense. The court noted further that defendant had not even shown up for the resentencing hearing. Nevertheless, the court did not state or imply that it was imposing the eight-year prison sentence as retribution for these violations. We are not strongly persuaded that the court considered them as anything other than a factor in assessing defendant's rehabilitative potential. Therefore, we reject defendant's first claim of error.

¶ 37    Defendant contends second that his eight-year sentence is excessive. He argues that the offense itself was relatively mild for an attempted armed robbery, as nobody was ever threatened with the gun and the gun was inoperable. Defendant also points to his lack of a prior record, his youth, and the circumstances of his upbringing as factors in mitigation that the trial court did not give sufficient weight.

¶ 38    The trial court has broad discretion in sentencing, and, on review, its decision is entitled to great deference. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). Thus, we must not substitute our judgment for that of the trial court merely because we would have weighed the factors in mitigation

and aggravation differently. *Id.* We may deem a sentence excessive only when it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense. *Id.* at 210. Moreover, the trial court need not explicitly analyze each relevant factor in sentencing, and we presume that the court considered any mitigating evidence in front of it. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46.

¶ 39    We cannot say that defendant's sentence was greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense, given the numerous pertinent factors in aggravation upon which the trial court properly relied. As noted, defendant's 8-year sentence was toward the low end of the statutory range of 4 to 15 years. Defendant is correct that he did not end up threatening anyone at the Circle K, but this one factor in no way suggests that a sentence seven years short of the maximum was manifestly disproportionate to the nature of the offense.

¶ 40    Moreover, although the seriousness of the offense is an important consideration, it is not the only important one. Defendant does not contend that he should have been given yet another opportunity at probation despite his numerous failures on each prior occasion. Repeatedly missing appointments and testing positive for drugs were indeed serious indicia of defendant's dubious rehabilitative potential, but even more telling were the several offenses he committed after the attempted armed robbery. The very day after defendant declined to enter the Circle K and threaten anyone with a firearm, he entered the 7-Eleven, threatened a clerk with what looked like an operative firearm, and took cash from the store. Less than a year later, defendant committed two misdemeanor offenses in attempts to evade the police.

¶ 41    Although the trial court could not (and did not) punish defendant for the offenses he committed shortly after the one here, it could (and did) consider them as serious factors in

aggravation. Had defendant committed the armed robbery before he committed the attempted robbery, nobody would question the use of this prior offense as a factor in aggravation. A criminal record acquired shortly after the offense for which a defendant is to be resentenced is as legitimate a consideration as a record acquired before that offense. The court explicitly considered defendant's lack of a prior record as a mitigating factor. It also considered his subsequent record as an aggravating one.

¶ 42    As to the other mitigating factors that defendant cites, these were all before the court. We presume the court considered them, and we shall not reweigh them. The court also considered another proper aggravating factor, the need to protect the public. Given defendant's proclivity for criminal activity when given sufficient time and opportunity, the court reasonably concluded that imprisoning him for longer than the statutory minimum would protect the public for a longer time. Finally, the court took into account the need to deter others, a statutory factor that defendant does not contest. All in all, we cannot say that defendant's sentence is excessive. We reject defendant's second claim.

¶ 43                                III. CONCLUSION

¶ 44    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 45    Affirmed.