2023 IL App (2d) 220263-U
Nos. 2-22-0263 & 2-22-0264 cons.
Order filed April 10, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kendall County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 21-CF-354 No. 22-CF-90 |
| JAQUARANCE C. HANDLEY, | ) ) ) | Honorable Robert P. Pilmer, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Birkett and Kennedy concurred in the judgment.

**ORDER**

¶ 1    *Held*: On appeal from his aggravated-battery convictions, defendant failed (1) to show prejudice from the denial of his for-cause challenge to a potential juror and (2) to establish that his trial attorneys were ineffective for failing to seek reduction of his sentences.

¶ 2    These consolidated appeals arise from separate prosecutions for aggravated battery (720 ILCS 5/12-3(a)(2), 12-3.05(d)(4) (West 2020)). In both prosecutions, defendant, Jaquarance C. Handley, was charged with making physical contact of an insulting or provoking nature with Mark Snead, knowing that Snead was a peace officer performing his official duties. In case No. 21-CF-

354, defendant was charged with two counts of aggravated battery based on allegations that he kicked Snead (count I) and spat on him (count II). In case No. 22-CF-90, defendant was charged with a single count of aggravated battery based on the allegation that he slapped Snead. Following separate jury trials, defendant was found guilty on all counts. At a combined sentencing hearing, the trial court imposed consecutive prison terms of seven years in case No. 21-CF-354 and five years in case No. 22-CF-90. Defendant filed a timely notice of appeal in each case. We docketed the appeal in case No. 22-CF-90 as case No. 2-22-0263 and the appeal in case No. 21-CF-354 as case No. 2-22-0264. In appeal No. 2-22-0263, defendant argues that the trial court erred in denying his motion to excuse a particular prospective juror for cause. In both appeals, defendant argues that he received ineffective assistance of counsel because his attorneys failed to move to reconsider his sentences. We affirm.

¶ 3                                I. BACKGROUND

¶ 4                     A. Jury Selection in Case No. 22-CF-90

¶ 5       During jury selection in case No. 22-CF-90, the prosecutor asked juror 132 if he "would make a good juror" in defendant's trial. Juror 132 answered, "I'm not sure. Between family battery, violent case between—having family member violence, I don't have much sympathy for aggressive or violent people I would say." When asked twice if he could set those feelings aside, juror 132 responded each time, "Possibly." When asked if he would "actually listen to the evidence," rather than "go in with a preconceived notion that [defendant] is guilty just because he is being tried," juror 132 responded, "Again, I do have that bias of the past with people, so it's possible." The prosecutor asked juror 132 if he could "set aside what [his] past history is and sign a not guilty verdict" if the State failed to meet its burden of proof. Juror 132 answered that he

could. But when asked yet again if he could set aside his preconceived notions during deliberations, juror 132's answer was equivocal: "Yeah, possibly."

¶ 6    When defense counsel asked juror 132 if he could be fair and impartial if he knew that defendant "is in custody currently[,]" juror 132 responded, "something doesn't look very good. I'm guessing it's for another *** violent thing[.]"

¶ 7    A different prospective juror—juror 183—indicated that she was studying criminal justice. She knew and had dealings with police and corrections officers and thought they were "great" people. She was also a "court volunteer" for Mothers Against Drunk Driving.

¶ 8    Defendant moved to excuse juror 132 for cause. The trial court denied the motion, and defendant exercised a peremptory challenge against juror 132. Defendant then attempted to use a peremptory challenge against juror 183. However, the prosecutor advised defendant and the court that defendant had no peremptory challenges left. Juror 183 was seated on the jury.

¶ 9    B. Trials in Case Nos. 21-CF-354 and 22-CF-90

¶ 10    At trial in case No. 22-CF-90, Snead testified that he was a sergeant with the Kendall County Sheriff's Department and worked as a corrections officer at the Kendall County jail. On January 26, 2022, defendant was an inmate at the jail. That morning, Snead escorted a nurse to defendant's cell. Snead opened the cell's "pass[-]through," which allows jail personnel and inmates to communicate and pass items into and out of the cell without opening the door. The nurse was prepared to take defendant's blood-oxygen level and blood pressure. Defendant placed his hand through the pass-through so she could place a blood-oxygen sensor on his fingertip. Defendant started to pull his hand back into the cell with the sensor still attached to his finger. Snead grabbed the sensor. Defendant then reached his hand out and "smacked" Snead in the face. Snead testified that, before the blow, defendant had threatened to "slap" Snead. Jail-surveillance

video and body-camera video were played in court and admitted into evidence, but neither showed whether defendant's hand made contact with Snead.

¶ 11    Defendant was found guilty of the single count of aggravated battery.

¶ 12    In case No. 21-CF-354, Snead testified that on November 8, 2021, defendant was on suicide watch in the Kendall County jail. Defendant was dressed in a "suicide smock." He had used his mattress and toilet paper to cover the windows of his cell, preventing jail personnel from observing him. Snead approached the cell and tried to communicate with defendant. Defendant pulled down the mattress, but then covered the window again. Defendant said he was going to kill himself. Snead organized a team to perform a "cell extraction" to remove the mattress and tissue paper. When the team tried to remove the mattress, defendant pulled back on the mattress. Snead aimed pepper spray into the cell, but defendant attempted to block it with the suicide smock. Snead managed to fire the pepper spray, and then the team removed the mattress and the suicide smock. Because of the pepper spray, Snead asked defendant if he "wanted to step out [of the cell] and take a shower or go out and get decontaminated." Defendant was placed in handcuffs and removed from the cell. At that point, defendant kicked Snead in the leg. Defendant was taken to the shower. As Snead was preparing to remove defendant's handcuffs, defendant kicked Snead in the leg again. Defendant then spat in Snead's face. Snead took defendant to another cell. While Snead and other jail personnel tried to place defendant in the cell, defendant spat in Snead's face again.

¶ 13    Defendant was found guilty of both counts of aggravated battery.

¶ 14                 C. Sentencing in Case Nos. 21-CF-354 and 22-CF-90

¶ 15    At the combined sentencing hearing, the parties and the trial court agreed that (1) the aggravated batteries in both cases were Class 2 felonies, each punishable by a 3 to 7-year prison term, and (2) defendant was eligible on each count for an extended term of 7 to 14 years in prison.

See 720 ILCS 5/12-3.05(h) (West 2020) (aggravated battery of a peace officer is a Class 2 felony); 730 ILCS 5/5-4.5-35(a) (West 2020) (for a Class 2 felony, the base sentencing range is 3 to 7 years' imprisonment and the extended-term range is 7 to 14 years' imprisonment). The presentence investigation report indicated that defendant, born on February 23, 1989, had delinquency adjudications for aggravated battery and robbery. Defendant's criminal history included convictions of aggravated battery, domestic battery, resisting a peace officer or correctional employee, and three felony drug offenses.

¶ 16    In case No. 22-CF-90, where defendant was charged with slapping Snead, the trial court sentenced defendant to a five-year prison term. The court remarked that no mitigating factor was applicable, but the court added that "*possibly* factor 1 would be applicable to this situation." (Emphasis added.) Presumably, the court was referring to section 5-5-3.1(a)(1) of the Unified Code of Corrections (Code of Corrections) (730 ILCS 5/5-5-3.1(a)(1) (West 2020)), which provides:

> "(a) The following grounds shall be accorded weight in favor of withholding or minimizing a sentence of imprisonment:
>
> (1) The defendant's criminal conduct neither caused nor threatened serious physical harm to another."

As factors in aggravation, the court noted that defendant "ha[d] a history of prior delinquency or criminal activity[ ]" (see *id.* § 5-5-3.2(a)(3)) and that "the sentence [was] necessary to deter others from committing the same crime" (see *id.* § 5-5-3.2(a)(7)).

¶ 17    In case No. 21-CF-354, the trial court sentenced defendant to a seven-year prison term. As a factor in aggravation, the court found that although defendant's acts of kicking and spitting on Snead might not have actually caused serious harm, there was a *threat* of serious harm. See *id.*

§ 5-5-3.2(a)(1). Another aggravating factor was defendant's history of delinquency adjudications and criminal convictions.

¶ 18    Defendant filed a timely appeal in both cases.

¶ 19                                    II. ANALYSIS

¶ 20                        A. Jury Selection in Case No. 22-CF-90

¶ 21    Defendant first argues that, in case No. 22-CF-90, the trial court erred in denying his motion to strike juror 132 for cause. Defendant acknowledges that he forfeited the issue by failing to raise it in his posttrial motion. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). However, defendant seeks review of the issue under the plain-error rule, which permits review of a forfeited issue

> "(1) when a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) when a clear or obvious error occurred and the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Moon*, 2022 IL 125959, ¶ 20.

"We begin a plain-error analysis by determining if there was reversible error in the first instance, as '[a]bsent reversible error, there can be no plain error.' " *People v. Camacho*, 2018 IL App (2d) 160350, ¶ 38 (quoting *People v. Cosby*, 231 Ill. 2d 262, 273 (2008)).

¶ 22    Defendant argues that juror 132 should have been excused for cause because he equivocated about whether he could be fair and impartial. We agree.

¶ 23    Both the federal (U.S. Const.Amends.VI, XIV) and state constitutions (Ill. Const.1970, art. I, § 8) guarantee a criminal defendant the right to a trial by an impartial jury. *People v. Wilson*,

303 Ill. App. 3d 1035, 1041 (1999). *Voir dire* serves this guarantee by enabling the trial court to select impartial jurors who are free from bias or prejudice and by ensuring that lawyers have an informed and intelligent basis on which to exercise their peremptory challenges. *People v. Clark*, 278 Ill. App. 3d 996, 1003 (1996).

¶ 24　"The determination of whether a prospective juror is biased is within the sound discretion of the trial judge whose decision will not be reversed unless it is against the manifest weight of the evidence." *People v. Ephraim*, 323 Ill. App. 3d 1097, 1104 (2001). A decision is against the manifest weight of the evidence where it is unreasonable. *People v. Ortiz*, 355 Ill. App. 3d 1056, 1066 (2005).

¶ 25　The party claiming a juror has a disqualifying state of mind has the burden of showing the actual existence of this state of mind in the juror so as to raise the "presumption of partiality." *Id.* at 1105. The relevant inquiry is whether the questions and the procedures employed to gauge juror competency created a reasonable assurance that any prejudice or bias present would be discovered. *Wilson*, 303 Ill. App. 3d at 1042. The juror's entire *voir dire* examination must be considered. *People v. Buss*, 187 Ill. 2d 144, 187 (1999).

¶ 26　Viewing the entirety of juror 132's *voir dire* examination, we conclude that the trial court erred in denying defendant's motion to excuse the juror for cause. Juror 132 stated that family members were crime victims and that he did not sympathize with aggressive or violent people. He twice responded, equivocally, stating "Possibly," when asked if he could set aside those feelings. Further, when next asked if he would listen to the evidence rather than prejudging a case, he again noted his bias and responded, equivocally, that it was "possible." Juror 132 then responded that he could set aside his history and sign a not guilty verdict if the State did not prove its case, but also answered "possibly" when asked *yet again* if he could set aside his preconceived notions.

Finally, in response to defense counsel's question as to whether he could be impartial given that defendant was in custody, juror 132 responded "something doesn't look very good. I'm guessing it's for another *** violent thing."

¶ 27    As the foregoing clearly shows, over the course of his lengthy examination, juror 132 *repeatedly* equivocated about being fair and impartial. His responses, coupled with the fact that his family had been crime victims, unquestionably warranted excusing him for cause. See *People v. Johnson*, 215 Ill. App. 3d 713, 725 (1991) (holding that three jurors should have been excused for cause because they were crime victims or had family or friends who were victims of violent crimes and they equivocated when asked if they could be fair and impartial). The trial court's determination otherwise was unreasonable.

¶ 28    Although juror 132 ultimately did not serve on the jury, defendant relies on *People v. Novak*, 242 Ill. App. 3d 836, 857 (1993), which held that "even if a challenged venire member does not sit as a juror, a defendant may claim prejudice if he was forced to accept another objectionable juror after he had exhausted his peremptory challenges because the court refused to excuse the venire member challenged earlier for cause." Defendant argues that, because he used his last peremptory challenge on juror 132, he was forced to accept juror 183.

¶ 29    The parties disagree about the meaning of "objectionable" under *Novak*. Defendant maintains that it was enough that *he* objected to juror 183 but could not use a peremptory challenge against her. The State counters that courts have held that a juror is "objectionable" only if there is cause to exclude that juror from the jury. We agree with the State.

¶ 30    We acknowledge that defendant's position is supported by language in *Novak,* where the court declined to review a challenge for cause because "it [did] not appear from the record *** that the circuit court's ruling forced [the defendant] to squander two peremptory challenges and

therefore he had no peremptory challenges remaining *when he desired later to excuse a venire member but had no ground for doing so for cause*." (Emphasis added.) *Id.* The pertinent language is *dictum*, however. Because the defendant in *Novak* apparently did not exhaust his peremptory challenges, he was not forced to accept *any* jurors, and the court had no occasion to determine the meaning of "objectionable."

¶ 31 The principle that the denial of a challenge for cause is reviewable only if the defendant exhausted his or her peremptory challenges and was forced to accept an "objectionable" juror appears to have originated in *Spies v. People*, 122 Ill. 1 (1887). In *Spies*, the 8 defendants had 20 peremptory challenges each. *Id.* at 256. They used all 160 of the peremptory challenges against prospective jurors before selecting the 12th juror, Sanford. *Id.* at 257. The defendants had unsuccessfully challenged each of those prospective jurors for cause before using peremptory challenges against them. *Id.* The defendants also unsuccessfully challenged Sanford for cause but had no peremptory challenges left to exclude him from the jury. *Id.* On appeal, the defendants sought review of the trial court's refusal to excuse, for cause, the prospective jurors against whom the defendants later used peremptory challenges. *Id.* The *Spies* court refused, reasoning as follows:

> "[I]t must be made to appear that an objectionable juror was put upon the
> defendants after they had exhausted their peremptory challenges. 'Unless objection is
> shown to some one or more of the jury, who *tried* the case, the antecedent rulings of the
> court upon the competency or incompetency of jurors, who have been challenged and stood
> aside, will not be inquired into in this court.' [Citation.]
>
> We can not [*sic*] reverse this judgment for errors committed in the lower court in
> overruling challenges for cause to jurors, even though defendants exhausted their

peremptory challenges[,] unless it is further shown that an objectionable juror was forced upon them and sat upon the case after they had exhausted their peremptory challenges." (Emphasis in original.) *Id.* at 257-58.

¶ 32    The *Spies* court then considered whether there was cause for excusing Sanford from the jury and concluded that there was not. *Id.* at 258, 264. Thus, the *Spies* court necessarily understood that an "objectionable" juror is one that is excludable for cause. If, as defendant contends, a juror is "objectionable" simply because the *defendant* objects to that juror, then the defendants in *Spies* would have been able to show prejudice simply by showing that they were forced to accept Sanford.

¶ 33    In a civil case, *Flynn v. Edmonds*, 236 Ill. App. 3d 770, 782 (1992), the appellate court adopted this interpretation of *Spies*:

> "[A] trial court's ruling on a challenge for cause will only be reviewed when an *objectionable* juror was forced upon the party after its peremptory challenges have been exhausted. [Citation.] Examination of the *Spies* opinion requires 'objectionable' to mean a juror who should have been dismissed for cause—one who would prejudice the case." (Emphasis in original.)

¶ 34    In *People v. Reid*, 272 Ill. App. 3d 301, 304 (1995), the defendant used his last peremptory challenge on a prospective juror after the trial court denied the defendant's motion to excuse the prospective juror for cause. The defendant then asked for an extra peremptory challenge to use against another prospective juror. *Id.* The court denied the request. *Id.* On appeal, the *Reid* court affirmed the denial. *Id.* at 308-09. The court reasoned that "[a]ssuming, *arguendo*, the trial judge in this case had *** discretion [to grant an additional peremptory challenge], there would be no prejudicial error. The defendant made no showing that an 'objectionable juror' was forced on her

after she exhausted her peremptory challenges." *Id.* at 309. Quoting *Flynn*, the *Reid* court explained that "[a]n 'objectionable juror' has been defined as 'a juror who should have been dismissed for cause—one who would prejudice the case.' " *Id.* (quoting *Flynn*, 236 Ill. App. 3d at 782). The *Reid* court added:

> "The defendant takes the position that an 'objectionable juror' is anyone she did not want on her jury. We do not agree. There must be some attempt to persuade the trial judge that a juror the defendant was required to accept could not be fair and impartial. The failure to make such a showing forecloses further consideration of the issue. [Citation.]" *Id.*

Here, although defendant would have preferred that juror 183 not sit on the jury, he does not argue that there was cause to exclude her. Accordingly, the denial of defendant's motion was not grounds for reversal.

¶ 35                    B. Sentencing in Case Nos. 21-CF-354 and 22-CF-90

¶ 36    Defendant next argues that he was deprived of the effective assistance of counsel in both cases because his attorneys did not move to reconsider his sentences. We evaluate ineffective-assistance claims using the two-prong *Strickland* test. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). *Strickland* requires a showing that counsel's performance "fell below an objective standard of reasonableness" and that the deficient performance was prejudicial in that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

¶ 37    The following principles govern review of sentencing decisions:

> "It is well established that '[a] sentence within the statutory limits for the offense will not be disturbed unless the trial court abused its discretion,' which occurs when 'the

trial court imposes a sentence that is greatly at variance with the spirit and purpose of the law, or is manifestly disproportionate to the crime.' [Citation.] 'A trial court has wide latitude in sentencing a defendant, so long as it neither ignores relevant mitigating factors nor considers improper factors in aggravation.' [Citation.] It has been observed that '[t]he Illinois Constitution mandates the balancing of both retributive and rehabilitative purposes of punishment.' [Citation.] Accordingly, '[t]he trial court is therefore required to consider both the seriousness of the offense and the likelihood of restoring the offender to useful citizenship.' [Citation.] The court is required to consider all factors in aggravation and mitigation. [Citation.] 'A sentence must be based on the particular circumstances of each case and depends on many factors, including the defendant's criminal history *** and the need to protect the public and provide a deterrent to crime.' [Citation.]" *People v. McGee*, 2020 IL App (2d) 180998, ¶ 8.

¶ 38    Defendant argues that his five-year prison sentence in case No. 22-CF-90 was "manifestly disproportionate to his conduct." Defendant notes that the seriousness of the offense is the most important factor in sentencing. See, *e.g.*, *People v. Alarcon-Trujillo*, 2021 IL App (2d) 191046, ¶ 32. Defendant stresses that Snead evidently suffered no serious harm from being slapped. According to defendant, "[his] conduct of slapping Snead in the face one time from behind a locked door was not so serious as to merit a sentence above the minimum term of three years." Thus, defendant contends that there is a reasonable probability that, had his attorney moved to reconsider his sentence, the motion would have succeeded. We disagree.

¶ 39    First, although defendant did not seriously harm Snead, bodily harm was not an element of the offense. Section 12-3.05(d)(4)(i) of the Criminal Code of 2012 (720 ILCS 5/12-3.05(d)(4)(i) (West 2020)) provides, in pertinent part, that "[a] person commits aggravated battery when, in

committing a battery, *** he or she knows the individual battered to be *** a peace officer *** performing his or her official duties[.]" As pertinent here, section 12-3(a)(2) of the Code (*id.* § 12-3(a)(2)) provides that "[a] person commits battery if he or she knowingly without legal justification by any means *** makes physical contact of an insulting or provoking nature with an individual." We are aware of no authority that insulting or provoking conduct can be serious only if it results in serious bodily harm. Slapping someone in the face is seriously insulting and provoking; indeed, even the phrase "a slap in the face" is synonymous with "insult." See *A Slap in the Face*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/a%20slap%20in%20the%20face (last visited Mar. 17, 2023) [https://perma.cc/HV4Z-HFHZ].

¶ 40    Furthermore, as we noted in *People v. Hamilton*, 2022 IL App (2d) 210441-U, ¶ 40, "although the seriousness of the offense is an important consideration, it is not the only important one." In *Hamilton*, the defendant was convicted of attempted armed robbery where he armed himself with a gun to rob a convenience store but aborted the plan before even entering the store. *Id.* ¶ 4. He was sentenced to an 8-year prison term, which was within the statutory range of 4 to 15 years' imprisonment. *Id.* ¶¶ 26, 32 (citing 720 ILCS 5/8-4(c)(2) (West 2016); 730 ILCS 5/5-4.5-30(a) (West 2016)). Given the abundance of evidence of the defendant's poor rehabilitative potential, we held that a sentence longer than the statutory minimum was not excessive. *Id.* ¶ 42.

¶ 41    In *Hamilton*, the defendant's sentence was in the lower half of the sentencing range. Here, defendant's five-year sentence was exactly at the midpoint of the three-to-seven-year sentencing range. In light of defendant's criminal history, we cannot say this sentence was excessive.

¶ 42    We note that defendant cites two cases where the supreme court reduced the sentence because it was excessive in relation to the offense(s). See *People v. Magette*, 195 Ill. 2d 336, 355

(2001); *People v. Stacey*, 193 Ill. 2d 203, 211-12 (2000). Suffice it to say, because their facts bear no meaningful resemblance to the facts here, those cases provide no useful guidance.

¶ 43 Nor can we say that was defendant's sentence in case No. 21-CF-354 was excessive. Although defendant received the maximum sentence of seven years' imprisonment, his conduct— kicking and spitting on Snead—was more serious than his conduct in case No. 22-CF-90. We note that in *People v. Wys*, 103 Ill. App. 3d 273, 274 (1982), the defendant was convicted of separate counts of aggravated battery of a peace officer for kicking (count II) and spitting at (count III) a police officer. The *Wys* court held that, in light of the defendant's extensive criminal history, his conduct warranted the maximum sentence (which, at the time, was five years' imprisonment for each count of aggravated battery (see Ill. Rev. Stat. 1979, ch. 38, ¶ 1005-8-1(a)(6)). *Id.* at 279. Although the maximum sentence for aggravated battery of a peace officer is currently longer, it was likewise warranted in this case.

¶ 44 Finally, we note the trial court's relative leniency. The court found defendant eligible for an extended term (between 7 and 14 years' imprisonment) yet did not impose one in either case. Defendant agreed below that he was eligible for an extended term, and he does not change that stance on appeal. See *People v. Kulpin*, 2021 IL App (2d) 180696, ¶ 81 (the defendant's sentence was not excessive, partly because the trial court found the defendant eligible for an extended term yet did not impose it, and the defendant did not dispute on appeal that he was eligible for an extended term).

¶ 45 The trial court might conceivably have lowered defendant's sentences if his attorneys had moved to reconsider. However, we cannot say there is a reasonable probability that the trial court would have done so. Accordingly, defendant has failed to establish the prejudice prong of his ineffective-assistance claim.

¶ 46                                    III. CONCLUSION

¶ 47     For the reasons stated, we affirm the judgment of the circuit court of Kendall County.

¶ 48     Affirmed.